

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,                                )
                                             )
      Plaintiff,                       )
                                             )
     v.                                    )    Civil Action No.  04-1391(KAJ)
                                             )
STANLEY TAYLOR; PAUL HOWARD;                 )
THOMAS CARROLL; JOHN SALAS;                  )    JURY TRIAL DEMANDED
JESSICA DAVIS-BARTON; CERTAIN                )
UNKNOWN  INDIVIDUAL EMPLOYEES OF             )
THE STATE OF DELAWARE DEPARTMENT             )
OF CORRECTION; and STATE OF DELAWARE         )
DEPARTMENT OF CORRECTION,                    )
                                             )
      Defendants.                      )

---

## PLAINTIFF'S ANSWERING BRIEF TO
## DEFENDANTS' MOTION TO DISMISS

---

Jeffrey K. Martin, Esquire (#2407)
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680
Attorneys for Plaintiff

Herbert G. Feuerhake, Esquire (#2590)
The Law Office of Herbert G. Feuerhake
521 West Street
Wilmington, DE  19801
(302) 658-6101
Attorney for Plaintiff

Dated: February 22, 2005

## TABLE OF CONTENTS

**Page No.**

TABLE OF CITATIONS ................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS .............................. 1

SUMMARY OF ARGUMENT ......................................................... 2

STATEMENT OF FACTS ............................................................ 3

STATEMENT OF QUESTIONS PRESENTED .................................. 7

ARGUMENT ............................................................................. 9

I.    Preliminary Note re Lack of Discovery in this Matter, and Standard
      on a Motion to Dismiss per Rule 12 ......................................... 9

II.   The Substantive Arguments Asserted by the Defendants Fail ............10

      A.    Plaintiff has adequately pled a claim of deliberate
            indifference to his medical needs in violation of the
            Eighth Amendment ................................................... 11

      B.    Plaintiff has adequately pled a claim of deliberate indifference
            to the threat of violence to Mr. Ward from inmate
            Robert Johnson ....................................................... 13

      C.    Plaintiff has adequately pled a claim of violation of his Freedom
            of Speech: retaliatory transfer and/or deliberate indifference to
            medical needs ........................................................ 17

      D.    Plaintiff has adequately pled the failure to train, or to maintain
            proper customs, policies, or practices ............................. 19

      E.    Plaintiff has adequately pled a substantive due process claim
            asserting a state-created danger ................................... 21

      F.    Plaintiff has adequately pled a conspiracy claim .................. 22

      G.    As to Eleventh Amendment immunity, sovereign immunity,
            and qualified immunity .............................................. 23

      H.    As to Respondeat Superior ........................................... 24

CONCLUSION ........................................................................ 25

## TABLE OF CITATIONS

**Cases**                                                            **Page No.**

Atkinson v. Taylor, 316 F.3d 257, 270 (3rd Cir. 2003) ..........................    19

Beers-Capitol v. Whetzel, 256 F.3d 120, 130-135
(3rd Cir. 2001) ................................................................ 13, 14, 15, 17

Bray v. Alexandria Women's Health Clinic, 506 U.S. 289, 113 S.Ct. 753,
769-770, ___ L.Ed.2d ___ (1993) ....................................................    23

Carter v. City of Philadelphia, 181 F.3d. 339, 356
(3rd Cir. 1999) .......................................................... 19, 20, 21, 24

Castle v. Clymer, 15 F.Supp.2d 640, 661 (E.D.Pa. 1998) ..................... 18, 19

Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140 (3rd Cir. 1995) ....    23

City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103
L.Ed.2d 412 (1989) ............................................................... 19, 20

County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140
L.Ed.2d 1043 (1998) ..................................................................    21

DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189,
109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ......................................... 21, 22

Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811
(1994) ..................................................................... 13, 14, 15, 16

Fisher v. Cocke County, 97 F.3d 1451 (table), 1996 WL 520793
(6th Cir. 1996) .......................................................................    16

Hamilton v. Leavy, 117 F.3d 742 (3rd Cir. 1997) ......................... 14, 15, 16

Kniepp v. Tedder, 95 F.3d 1199 (3rd Cir. 1996) ........................... 21, 22

Lodato v. Ortiz, 314 F.Supp.2d 379, 387 (D.N.J. 2004) ..........................    18

Mitchell v. Horn, 318 F.3d 523, 530 (3rd Cir. 2003) ....................... 18, 19

Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d
326, 346 (3rd Cir. 1987) ............................................................. 12, 13

Morse v. Lower Merion School District, 132 F.3d 902, 906
(3rd Cir. 1997) .......................................................................    10

**Cases**                                                    **Page No.**

Natale v. Camden County Correctional Facility, 318 F.3d 575
(3rd Cir. 2003) ……………………………………………………    21

Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001) ……………………    18, 19

Rivas v. City of Passaic, 365 F.3d 181 (3rd Cir. 2004) ……………………    21, 22

Sample v. Diecks, 885 F.2d 1099, 1118 (3rd Cir., 1989) ………………….    20, 21

Spruill v. Gillis, 372 F.3d 218, 223 (3rd Cir. 2004) ……………………    10, 12, 13


**Statutes, Acts & Rules**

42 U.S.C. 1983 ……………………………………………..………….    1, 20

Federal Rules of Civil Procedure, Rule 12(b)(6) ………………………………    1

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Timothy Ward (hereinafter "Plaintiff" or "Mr. Ward" or "Tim"), who was at all relevant times hereto an inmate at Delaware Correctional Center in Smyrna, Delaware (hereinafter "DCC" or the "Smyrna prison"), has filed a complaint alleging, inter alia, that he was beaten senseless by another inmate known to be deranged and dangerous, and further that certain defendants were thereafter indifferent to his urgent need for ongoing medical attention.

The Complaint is brought against five individually named defendant employees of the Department of Correction (hereinafter "DOC") of the State of Delaware, as well as certain "unknown individual employees" of the DOC, and the DOC itself. Five claims are stated: under 42 U.S.C. § 1983 (hereinafter "§ 1983") alleging cruel and unusual punishment in violation of the Eighth Amendment to the Constitution; under § 1983 alleging violation of the freedom of speech guaranteed by the First Amendment; under § 1983 alleging failure to train or the maintenance of wrongful customs, policies, or practices; under § 1983, invoking the "state-created danger" doctrine; and under 42 U.S.C. § 1985, alleging a conspiracy to deny civil rights.

The Defendants have filed a Motion to Dismiss the complaint under Rule 12(b)(6), with a supporting Memorandum of Points and Authorities (hereinafter "DOC Brief").

This is Plaintiff's Answering Brief in opposition to the Motion to Dismiss.

1

## SUMMARY OF ARGUMENT

1.      Mr. Ward's allegations of denial of adequate medical care are sufficient to establish a deliberate indifference claim under the Eighth Amendment.

2.      Mr. Ward's allegations of deliberate indifference to a threat of violence are sufficient to establish a valid claim under the Eighth Amendment.

3.      Mr. Ward has adequately pled the elements of a claim of retaliation in violation of his exercise of right to Free Speech.

4.      Mr. Ward has adequately pled a claim against defendants for failure to train or for maintenance of improper customs, practices, and policies, leading to a deprivation of his civil rights.

5.      Mr. Ward's claim based upon a due process violation under the state-created danger doctrine is not subsumed by similar Eighth Amendment claims.

6.      Insofar as he cannot identify class-based motivation for a conspiracy, Mr. Ward agrees that he has failed to allege a conspiracy under 42 U.S.C. § 1985.

7.      Eleventh Amendment immunity is not relevant to the claims presented herein; insufficient facts exist at this pre-discovery stage to determine whether sovereign immunity to the claims exists; and qualified immunity to claims of deliberate indifference and retaliation as pled herein is not available to insulate defendants from the instant claims.

8.      Mr. Ward is not relying on the doctrine of respondeat superior.

## STATEMENT OF FACTS

Unless otherwise indicated, all facts set forth herein are taken directly from the Complaint, as is appropriate on a Motion to Dismiss. Key points will be reiterated in this Statement of Facts, but all the allegations of the Complaint should be considered as incorporated by reference. Certain of the facts set forth in the Complaint are pled on "information and belief," insofar as no discovery has yet been had in this matter to fill in the gaps. Reference to paragraphs of the complaint in this Statement of Facts will be preceded by a "¶."

On July 10, 2004, in the prison yard at DCC, inmate Robert Johnson, acting without provocation of any sort, wrapped his watch around his knuckles and struck an unsuspecting Tim Ward on the right side of his face about the eye socket, then in the jaw, rendering Mr. Ward unconscious; Johnson then repeatedly and brutally punched and kicked the unconscious Mr. Ward in the face and head (¶¶25, 26). When it became apparent that no correctional officers were available to stop the beating, two other inmates finally pulled Johnson off Mr. Ward, while other inmates screamed for help and sought out responsible correctional officers (¶27).

Defendant John Salas, a Lieutenant correctional officer, was responsible for oversight and security in the yard where the beating occurred (¶¶5, 20).

The correctional officers thereafter responding to Mr. Ward initially believed that he was dead; rather then render medical aid, they took pictures of his body (¶28). An unidentified inmate heard gurgling sounds emanating from Mr. Ward, however, and cleared Mr. Ward's throat so that he could breathe (¶29). Mr. Ward was then taken to the infirmary (¶ 30).

The background to this attack indicates that inmate Johnson had been exhibiting troubled behavior for some time, continuing right up until the morning of the attack. Approximately two months prior to the attack, in May of 2004, he had attempted to commit suicide by jumping out of a

3

second floor prison dormitory window (¶12). During the night of July 9-10, 2004, which was the night before the above-described attack, Mr. Johnson had been awake and causing a commotion throughout the night, disrupting the sleeping quarters for all the other inmates (¶13). During morning "chow" on July 10, Johnson threatened to rape a correctional officer, and exhibited generally curious and erratic behavior (¶¶14, 15). As a result of his outrageous behavior during the night and continuing during chow, inmate Johnson was taken by correctional officers to the infirmary to be evaluated; there was, however, no one there to evaluate him (¶16). Despite his agitated condition, correctional officers thereafter returned inmate Johnson to the prison yard and released him (¶17); immediately following this release, after the officers had left, inmate Johnson perpetrated the above-described attack on Mr. Ward.

After the attack, it was readily apparent that Mr. Ward's injuries were severe, including facial lacerations, a three-inch by one-and-a-half-inch "knot" on his forehead, and a "black" skin color (Mr. Ward is Caucasian); due to the extent of the injuries, the infirmary ordered that Mr. Ward be sent to the Kent County General Hospital (hereinafter "the hospital") emergency room (¶30). After the DOC Shift Commander initially denied this request (¶31), someone from the infirmary called for an ambulance, and Mr. Ward eventually arrived at the hospital (¶33). At the hospital, it was determined that his injuries included: a broken nose; dislocated jaw; damage to his eye; a shattered eye socket; teeth knocked out; other teeth twisted and broken; numerous facial fractures; numerous facial lacerations; bloody masses; tissue drainage; and severe bruising (¶33). In the days following the attack, Mr. Ward's face was so swollen that he was unrecognizable and described as "grotesque" (¶33).

After approximately four hours at the hospital, Mr. Ward was returned to the infirmary, where he was given Motrin and Darvocet for pain but was not seen by a medical doctor (¶¶34, 35).

4

His family was not immediately notified of the attack, but the next day, July 11, 2004, his mother and daughter saw him and were horrified by his appearance; in particular, he was still in the same dirty and bloody clothes in which he had been beaten, and his head was swollen and disfigured (¶¶36, 37).

As noted above, Mr. Ward is unable, at this pre-discovery stage of the instant litigation, to render a complete accounting of the manner in which ensuing medical treatment was deficient, nor is he able to identify with certainty all responsible parties, but the allegations in the complaint can be summarized as follows:

- Mr. Ward was denied a soft food diet, which left him starving; he had to request $50.00 from his mother to buy "instant breakfast" at the commissary (¶40);

- there was a nine-day gap, from the date of the attack on July 10, 2004 until July 19, 2004, between the infliction of Mr. Ward's injuries and his examination by an oral surgeon, Dr. Norman Lippman (¶¶41, 45);

- despite Dr. Lippman's instructions for a soft food diet, the infirmary gave instructions that Mr. Ward "Start Regular Diet" on July 20, 2004 (¶42);

- Dr. Lippman indicated the need for a consultation with an ophthalmologist, a need which was ignored (¶41);

- Mr. Ward's stitches were removed and he was released from the infirmary on July 20, 2004, without further examination by a doctor (¶42);

- Mr. Ward was provided no treatment in response to his July 30, 2004 complaint that he had re-broken his jaw eating solid food, and was experiencing severe face and eye pain (¶43);

- on July 31, 2004, Mr. Ward requested medical care for severe pain, but was only scheduled for an appointment on August 2, 2004, at which appointment one of his pain medications was discontinued, and a consultation with an *optometrist* was recommended (an absurd recommendation, insofar as an optometrist is concerned with prescribing lenses to correct errors in refraction; he needed to see an *ophthalmologist*, as Dr. Lippman had recommended) (¶45);

- by August 8, with no further treatment, Mr. Ward submitted a medical report noting "unbearable" face pain and eye pain, aches and nerve pain radiating into his jaw, inability to chew food or eat, and a need for sunglasses and pain medication (¶46);

- in an August 10, 2004 meeting, Mr. Ward's sister was told by his prison counselor, defendant Jessica Davis-Barton, that the attack had been Tim's fault, a preposterous statement raising concerns that a cover-up was in the works (¶47), concerns compounded by efforts by the DCC to squelch Mr. Ward's allegations with regard to

5

the fact that the infirmary had been unable to review Mr. Johnson's erratic and angry condition on the morning prior to his attack on Mr. Ward;

· in a medical appointment on August 12, 2004, Mr. Ward received no treatment and all that was done was to schedule another appointment for him to see an optometrist (despite his reports of severe pain) (¶49), then on August 16, 2004 Mr. Ward filed a medical report which stated, among other things, that "I am in extreme pain, for 36 days straight now my eye and fact have been aching nonstop, I cannot stand the pain, I need sunglasses or an eyepatch now . . . Need more medication! Also need antibiotics for my nose swelling" (¶50, emphasis in original), but again all he received was a date for a future appointment (¶51);

· Mr. Ward was, it is believed, seen thereafter by an optometrist who prescribed sunglasses which were never received by Mr. Ward.

Thus as the second half of August dragged on, Mr. Ward was continually unable to obtain necessary treatment. Moreover, his counselor, defendant Barton-Davis, violated confidentiality restrictions by discussing Tim's situation with other inmates, and she obstructed his efforts to report his medical needs (¶¶53 to 56), inducing Mr. Ward to file a grievance that has not been acted upon (¶57).

As Mr. Ward continued to be denied proper medical treatment, and could not even get access to the liquid "Ensure" food supplement that his mother had sent him so that he could eat, on August 31, 2004 the undersigned attorney Jeffrey K. Martin, Esq., wrote to Governor Minner in an attempt to get someone to pay attention to Mr. Ward's needs (¶¶59 to 61); the Governor's office replied that Mr. Ward was receiving "substantial medical attention" (¶64). Mr. Ward was then placed in the infirmary, but this amounted to a worsening of the situation insofar as he was essentially ignored, unable to shower or change his clothes, with no capacity to contact the outside world, and his family was unaware of his whereabouts (¶¶62 to 66).

At about this time, as a result of publicity regarding his case appearing in the Wilmington News-Journal newspaper, Mr. Ward began to be harassed by guards (¶67).

On September 9, 2004, Mr. Ward was seen, at his family's expense, by an outside physician, Dr. Pasquale Fucci, who recommended that he be seen by an ophthalmologist and an otolaryngologist (ear, nose, and throat specialist), as well as recommending a follow-up MRI of Mr. Ward's brain and follow-up x-rays of his facial fractures (¶¶68-69).

Mr. Ward was thereafter released from the infirmary, but was soon placed into isolation (which has been characterized by counsel for the defendants as "protective custody"), then transferred to Sussex Correctional Institution (hereinafter "SCI") (¶¶70 to 73). He has been seen by an oculoplastic surgeon specializing in orbital reconstruction, but no surgery has been scheduled, and he continues to require dental surgery, examination by an audiologist, and sunglasses.

## STATEMENT OF QUESTIONS PRESENTED

1.      Are Mr. Ward's allegations of denial of adequate medical care sufficient to establish a deliberate indifference claim under the Eighth Amendment?

2.      Are Mr. Ward's allegations of deliberate indifference to a threat of violence sufficient to establish a valid claim under the Eighth Amendment?

3.      Has Mr. Ward adequately pled the elements of a claim of retaliation in violation of his exercise of right to Free Speech?

4.      Has Mr. Ward adequately pled a claim against defendants for failure to train or for maintenance of improper customs, practices, and policies, leading to a deprivation of his civil rights?

5.      Is Mr. Ward's claim based upon a due process violation under the state-created danger doctrine subsumed by similar Eighth Amendment claims?

6.      Has Mr. Ward failed to properly allege a conspiracy under 42 U.S.C. § 1985?

7

7.      Is Eleventh Amendment immunity relevant to the claims presented herein; do sufficient facts exist at this pre-discovery stage to determine whether sovereign immunity to the claims exists; and is qualified immunity to claims of deliberate indifference and retaliation as pled herein is available to insulate defendants from the instant claims?

8.      Is Mr. Ward improperly relying on the doctrine of respondeat superior?

## ARGUMENT

**I.    Preliminary Note re Lack of Discovery in this Matter, and Standard on a Motion to Dismiss per Rule 12.**

As a preliminary matter, it is noteworthy to reiterate that this case has not yet reached the discovery stage. The allegations in the Complaint are thus, of necessity, reflective only of those readily visible failures on the part of the defendants that contributed to the beating of Mr. Ward on July 10, 2004, and the deliberate indifference to his serious medical needs thereafter. As a prisoner, and indeed as a prisoner beaten senseless and in constant pain, Mr. Ward has been in a peculiarly difficult situation with regard to the gathering of facts in this matter, so that the lack of discovery leaves him in a vacuum.

Moreover, while the extraneous documentation supplied by defendants in support of their Motion to Dismiss is perhaps interesting and may even be shown to have relevance, it is simply improper to give such documentation any consideration on this motion. Plaintiff has had no opportunity through discovery to explore the impact and veracity of such documentation, nor to seek out additional information, nor to cross-examine those with knowledge about such documentation, nor to investigate through depositions and interrogatories the facts and circumstances of what happened to Mr. Ward on the day of his beating, nor to fully apprehend the manner in which his medical condition was handled within the closed world of the DOC thereafter. Defendants have suggested, for example, that DOC medical services are being supplied by an outside contractor. Mr. Ward was not in a position to obtain this information other than by hearsay, nor has he had the benefit of discovery to uncover such a fact. This outside contractor is clearly a

state actor for purposes of § 1983,[1] and would be an appropriate defendant in an amended complaint (and such amendment, we would submit, would be non-prejudicial at this early stage of the litigation, and well within the applicable statute of limitations). Indeed, it is to account for the discovery of potential new defendants such as this outside contractor that the plaintiff named "unknown" parties as defendants in the original Complaint. Moreover, the level of interaction between such an outside contractor and the DOC, and the amount of influence of the latter upon the former, is a matter not properly addressed without affording to plaintiff the right to discovery.

That being said, on a motion to dismiss this Court is required to accept as true all of the allegations in the Complaint, Spruill v. Gillis, 372 F.3d 218, 223 (3rd Cir. 2004), and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to Mr. Ward, although a complaint's "bald assertions" or "legal conclusions" need not be credited. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3rd Cir. 1997). For the motion to dismiss to be granted, *it must appear to a certainty that no relief could be granted under any set of facts which could be proved.* Morse, 132 F.2d at 906.

## II.    The Substantive Arguments Asserted by the Defendants Fail.

In an effort to obtain some level of correspondence between the arguments contained in this brief and the arguments made by defendants, we will attempt to follow the lettering pattern of the subheads in the DOC Brief. The only significant departure is that section A below responds to arguments related to medical treatment appearing in both section A and section B of the DOC Brief.

---

[1] See, for example, Natale v. Camden County Correctional Facility, 318 F.3d 575 (3rd Cir. 2003), wherein defendant Private Health Services, a "private company that provides health services to . . . inmates," 318 F.3d at 578, conceded that it was a state actor, 318 F.3d at 581.

10

A.    *Plaintiff has adequately pled a claim of deliberate indifference to his medical needs in violation of the Eighth Amendment.*

In section A of the DOC Brief, defendants address the fact that the DOC contracts out its medical services. After offering (improperly, on a motion to dismiss) the contract between the provider and the DOC, the DOC states: "Plaintiff offers no evidence that the State defendants affirmatively prevented him from seeing medical professionals or obstructed his access to medical care in any way," see paragraph 6 on page 5 of the DOC brief. That this is a correct statement goes to the essence of the problem with defendants' argument on this point; plaintiff, in fact, offers no evidence with regard to *anything* just yet, since we are at the "motion to dismiss" stage of this case, testing only the *allegations* of the complaint. Indeed, the problem is well-highlighted by another of defendants' improper exhibits, Exhibit C, the affidavit of defendant Correctional Lieutenant John Salas. The numerous factual assertions in that affidavit are treated, in paragraph 5 at pages 4-5 of the DOC Brief, as if they are somehow outside the bounds of 700 years of Anglo-American jurisprudence recognizing the value of cross-examination. Defendants are saying "we control the facts, here are the facts, end of story." This is simply not how the system works.

Relying upon these flawed premises with regard to the purported state of the *evidence*, defendants then state, at paragraph 7 of page 5 of the DOC brief: "In sum, plaintiff's complaint should be defined as a dispute concerning the quality of his medical treatment or a disagreement over how he should be medically treated. State defendants had no control over the medical professionals' decisions on his appropriate treatment." Setting aside for a moment the notion that the independent contractor (which, as noted above, is ultimately a state actor) may have made mistakes here, and setting aside the fact-intensive issue of the amount of influence that the DOC did or did not exert in this instance over the decisions of the independent contractor (which matters might well become the subject of an amended complaint), the major thrust of Mr. Ward's

allegations in this matter is that he was *denied access* to adequate medical care. This is a matter beyond the scope of defendants' self-serving assertion that the plaintiff's complaint should be defined as a dispute over the quality of medical treatment and/or medical decisionmaking.

And, indeed, it is access to adequate medical care that brings into play the Eighth Amendment. The Third Circuit recently spoke with clarity on the standards applicable in an Eighth Amendment case asserting deliberate indifference to medical needs, *see* Spruill v. Gillis, 372 F.3d 218, 235-237 (3rd Cir. 2004). Quoting that case at length (omitting citations and internal quotations):

> Only unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners are sufficiently egregious to rise to the level of a constitutional violation. . . . Allegations of medical malpractice are not sufficient to establish a Constitutional violation. . . Mere disagreement as to the proper medical treatment is also insufficient.

372 F.3d at 235.

Noting that the standard is clearly met when a doctor intentionally inflicts pain on a prisoner, the Third Circuit then identified "several other scenarios that satisfy" the relevant standard, including the following (omitting citations and internal quotations):

> Most relevant to this case are (1) where prison authorities deny reasonable requests for medical treatment . . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, . . . and (2) where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care.

372 F.3d at 235.

Finally, the Spruill opinion notes that the relevant standard requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious, 372 F.3d at 235-236.

The Spruill opinion then applies these standards, in the context of a motion to dismiss, to allegations raised against both medical and non-medical officials. Initially, it is indisputable that the injuries stated by plaintiff Ward satisfy the "serious" requirement; compare the allegations of the complaint in the instant matter with the discussion of the plaintiff's less serious "back condition" which was found to satisfy the standard in Spruill, 372 F.3d at 236. Plaintiff Ward has plead a variety of facts about his lack of care, and, in paragraph 78 of the Complaint, attributes the shortcomings as to that care to the intentional or deliberately indifferent conduct of the defendants. Under the notice pleading applicable under the federal rules, and in light of the lack of discovery allowed to this point in the matter, a comparison of the facts of the instant matter to the scenario in Spruill compel a finding that the matter not be dismissed. Even with regard to the non-medical defendants in this matter, such as DOC commissioner Stanley Taylor, the nature of the instant matter is such that the standards of administrative neglect established in Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3rd Cir. 1987), discussed in Spruill, 372 F.3d at 237, are met. The serious and obvious nature of the injuries suffered by Mr. Ward, coupled with the indifference he has alleged, are sufficient to satisfy the applicable notice pleading requirements, insofar as there is no need to allege specific facts to support the allegations as to the defendants' mental state of deliberate indifference or intentional conduct, see in particular discussion in Spruill, 372 F.3d 236 at footnote 12.

*B.     Plaintiff has adequately pled a claim of deliberate indifference to the threat of violence to Mr. Ward from inmate Robert Johnson.*

In the case of Beers-Capitol v. Whetzel, 256 F.3d 120, 130-135 (3rd Cir. 2001), the Third Circuit clarified, at some length, the Eighth Amendment deliberate indifference analysis for a prisons condition case (i.e. threat of violence and the like) derived from Farmer v. Brennan, 511

13

U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). But first let us briefly address a side issue of great importance herein.

That side issue: the Beers-Capitol opinion reviews a motion for *summary judgment*, and the deliberate indifference analysis therein highlights the fact-intensive nature of the inquiry; we would again submit that, without discovery, it is virtually impossible for a prisoner-plaintiff such as Mr. Ward to particularize allegations against prison officials. Indeed, of particular interest on this point is the Third Circuit's discussion in Beers-Capitol of one of its earlier opinions, Hamilton v. Leavy, 117 F.3d 742 (3rd Cir. 1997), in which it had reversed a grant of summary judgment in favor of certain prison officials in a Delaware state prison. In Hamilton, the Third Circuit had found that there was circumstantial evidence that a senior prison official "must have known" of the risk to the inmate plaintiff (who had been assaulted by another inmate; we will come back to the "must have known" standard in just a moment), and further that there was sufficient evidence that certain other defendants "could have done something more" to protect him (see discussion of Hamilton in Beers-Capitol, 256 F.3d at 132-133). In addition to providing a roadmap for the manner in which a claim of deliberate indifference to a threat of violence should be analyzed (and showing how one district court failed to give adequate credence to the plaintiff's position in that regard), the Hamilton court also commented as follows with regard to discovery:

> We do not believe that Hamilton's request for additional discovery and for leave to amend his complaint require extended discussion. The district court denied these requests on the ground that each was a futile attempt to salvage Hamilton's action under 42 U.S.C. § 1983. As we have explained above, the district court misconstrued Farmer, and Hamilton does have a colorable Eighth Amendment claim. We will, therefore, remand this issue to the district court with instructions to permit Hamilton to pursue full and reasonable discovery as is consistent with the Farmer mandate relating to circumstantial evidence, as described above. Because Hamilton's initial discovery request involved an effort to obtain the names of those officials who were aware of the substantial risk to his safety, and that request was

14

erroneously denied, it is appropriate that Hamilton be allowed to amend his complaint as well.

117 F.3d at 749.

We would submit that Mr. Ward is similarly entitled to discovery (and the right to amend his complaint to conform to matters learned through discovery).

In any event, the Beers-Capitol opinion summarizes the deliberate indifference analysis with regard to a threat of violence as follows:

> From Farmer and Hamilton we extract the following precepts. To be liable on a deliberate indifference claim, a defendant prison official must both "know[ ] of and disregard[ ] an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837, 114 S.Ct. 1970. The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. *See id.* at 837-838, 114 S.Ct. 1970. **However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the extent that the excessive risk was so obvious that the official must have known of the risk.** *See id.* at 842, 114 S.Ct. 1970. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring. *See id.* at 844, 114 S.Ct. 1970.

256 F.3d at 133 (emphasis supplied).

Thus while "*should* have known" liability is insufficient, it is replaced by a close cousin, "so obvious that the official *must* have known." Moreover (and this is a very important point), the Beers-Capitol opinion points to two lines of "deliberate indifference" analysis (see extended discussion in Beers-Capitol, 256 F.3d at 133 to 135 with regard to the applicable tests, and at 135 to 143 with regard to specific application of the tests to various classes of defendants): first, the direct deliberate indifference of those defendants "on the scene," so to speak (such as those officers who released the agitated inmate Johnson into the prison yard, immediately prior to the beating of Mr.

15

Ward), versus less direct deliberate indifference implicating supervisors for their deficient policies (there is clearly some overlap on this point between the claim of direct Eighth Amendment violation by supervisors, and the claim against supervisors for the maintenance of policies, customs, and practices, and failure to train, as discussed below in section D). The claims of direct deliberate indifference must meet, in a straightforward fashion, the Farmer-Hamilton standard described above. The less direct claims must meet the four-part test of Sample v. Diecks, 885 F.2d 1099, 1118 (3rd Cir., 1989). Under Sample, to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury, (2) the supervisor was aware that the unreasonable risk was created, (3) the supervisor was indifferent to that risk, and (4) the injury resulted from the policy or practice. In reviewing the manner in which these tests were applied by the court in Beers-Capitol, the key consideration for this Court to take away is that the analysis is necessarily and obviously *fact-intensive*. It is simply not possible for Mr. Ward, at this pre-discovery stage of the case, to allege more than that which he has alleged. But the allegations he has made, as described above in the Statement of Facts, clearly open the door for proof of facts which could establish a valid claim against each and every defendant, and at this "motion to dismiss" stage of the case, he is required to do no more.[2]

In paragraph 12 on page 13 of the DOC Brief, defendants cite the case of Fisher v. Cocke County, 97 F.3d 1451 (table), 1996 WL 520793 (6th Cir. 1996) for the proposition that qualified

---

[2] Mr. Ward notes that, on Friday, February 18, 2005, the Governor released the report of the recent independent task force inquiry into security problems at DCC. While the contents of that report are not in the record at this pre-discovery stage of the case, and while that task force was primarily concerned with identifying factors contributing to the abduction and rape of a psychological counselor at DCC that occurred on July 12, 2004, the general breakdowns in security and policies and procedures that are outlined in that report are just the sort of general breakdowns that plaintiff anticipates he will be developing in the discovery stage of the instant matter.

16

immunity is appropriate herein (that opinion is found at Tab A to the DOC Brief). A close reading of that decision seems to indicate that the Sixth Circuit actually found a failure on the part of the plaintiff to allege sufficient facts to establish a constitutional violation, thereby justifying the dismissal not on qualified immunity grounds but rather on the *merits* of the allegations (despite the fact that the Sixth Circuit says, at page \*\*5, that the defendants are "entitled to qualified immunity;" in fact, despite this language, they seem to be saying something quite different). In any event, in the instant matter, as noted above, the threat from Mr. Johnson's agitated condition was readily apparent, and the extent to which that agitated condition was known to various DOC personnel is a matter to be left to discovery. Thus, insofar as the right to be free from unsafe conditions under the Eighth Amendment is a well-known right, the issue in the instant matter is whether that right was violated *on the merits*, and if it were to be determined that it was in fact violated, it is clear that qualified immunity is not available to insulate the defendants. For relevant Third Circuit analysis on this point, it is again instructive to turn to Beers-Capitol v. Whetzel, *supra*. In an extended discussion in footnote 15 of that opinion, 256 F.3d at 142-143, the court notes that, insofar as actual awareness or knowledge is required for a showing of deliberate indifference, successfully convincing the trier-of-fact that a defendant has been deliberately indifferent to the Eighth Amendment right establishes, a *fortiori*, that such defendant's conduct could not have been objectively reasonable so as to invoke qualified immunity.

C.   *Plaintiff has adequately pled a claim of violation of his Freedom of Speech: retaliatory transfer and/or deliberate indifference to medical needs.*

In section C of the DOC Brief, defendants first assume, wrongly, that the only element of the Freedom of Speech claim asserted by plaintiff is that he was wrongfully transferred (indeed, much of the wrongful conduct alleged in the Complaint, such as deliberate indifference to medical needs, may have been in retaliation for Mr. Ward's exercise of his right to free speech by his filing

17

of grievances and the publicizing of his plight through the newspapers), then compound this error by relying on *due process* analysis (not, as they should have been, on *free speech* analysis, as will be discussed in more detail below), then finally complete the trifecta of misdirection by arguing about *evidence* (which might be relevant on a motion for summary judgment, but is not relevant on this motion to dismiss). Let us consider each of these problems in turn.

First as to defendants' assumption that Mr. Ward is relying only upon a wrongful *transfer* as grounds for his Freedom of Speech claim: the denial of medical care and proper food and other basic requirements is also part of the retaliatory "punishment" that he alleges he suffered, in addition to the transfer to the infirmary where he was ignored, the transfer to isolation or protective custody, and/or the transfer to SCI. All these events are detailed in the Complaint, and there is no limitation in Count II relating to freedom of speech to indicate that Mr. Ward was referring only to the transfers. At this early pleading stage of the case, without benefit of discovery, Mr. Ward has no reason to limit his allegations until he has the chance to explore the defendants' motivations. So defendants' assumption is incorrect.

Second, as to defendants' reliance on the due process clause and the fact that Mr. Ward has no liberty interest in remaining in the general prison population: the Third Circuit has expressly found that "the law of this circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied," Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001); see also Lodato v. Ortiz, 314 F.Supp.2d 379, 387 (D.N.J. 2004) at footnote 4, and Castle v. Clymer, 15 F.Supp.2d 640, 661 (E.D.Pa. 1998).

Third, defendants assert, at page 13 of the DOC Brief, that "[t]here is no *evidence* to suggest that the transfer was as a result of anything but concern for plaintiff's safety" (emphasis supplied). Again, there is no evidence of *anything* in this case; we are in the pre-discovery stage.

18

A prisoner alleging a retaliation claim must show: (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. Mitchell v. Horn, 318 F.3d 523, 530 (3rd Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001). On the first point, the filing of lawsuits and grievances, as well as contact with the newspapers, are all protected by the First Amendment, see Mitchell, *supra*, Rauser, *supra*, and Castle v. Clymer, *supra*. On the second point, administrative transfers have been found to be adverse actions sufficient to deter the exercise of constitutional rights, *see* for example Atkinson v. Taylor, 316 F.3d 257, 270 (3rd Cir. 2003) and Lodato, supra, 314 F.Supp.2d 379, 387 (D.N.J. 2004), and the withholding of medical treatment with deliberate indifference is on its face a constitutional violation, and is unquestionably sufficient to deter the exercise of constitutional rights. On the third point, plaintiff has adequately pled the causal connection in ¶81 of the Complaint (and earlier paragraphs setting forth his protected speech and the ensuing adverse actions), and further elucidation awaits the commencement of the discovery process.

  *D.*  *Plaintiff has adequately pled the failure to train, or to maintain proper customs, policies, or practices.*

  The Third Circuit has noted that, with regard to an assertion that an individual acting under color of state law has fostered a custom or policy that has resulted in a constitutional deprivation, the standard for personal individual liability for that wrongful custom or policy under § 1983 is the same as that for a municipality. *See,* Carter v. City of Philadelphia, 181 F.3d. 339, 356 (3rd Cir. 1999), cert. den. 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999). In Carter, plaintiff's conviction for murder was overturned due to evidence of widespread police misconduct. It was determined that the murder scene was, in the words of the Third Circuit, "purchased" by the police.

*Id.* 181 F.3d at n.3). Plaintiff then brought a § 1983 action against, *inter alia*, "unknown policymakers within the Philadelphia D.A.'s office," alleging that these policymakers failed to establish training, supervision, and discipline policies which would have prevented the wrongful practices of the police. The Carter court stated:

> Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact. City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
>     The Court in Canton observed that failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights.

*Id.* at 357.

In evaluating the District Court's finding that plaintiff had not satisfied pleading requirements in stating his claim on this issue, the Third Circuit continued:

> The District Court's insistence that Carter must identify a particular policy and attribute it to a policymaker, at the pleading stage without benefit of discovery, is unduly harsh. Carter is not engaged in a mere fishing expedition. Carter alleges that he spent ten years in prison as a result of a pervasive pattern of egregious, unconstitutional conduct by Philadelphia's police. He surmises, reasonably, that such misconduct reflects inadequate training and supervision. He ***cannot be expected to know, without discovery***, exactly what training policies were in place or how they were adopted.

*Id.* at 358 [emphasis added].

The Carter court also cites with approval the rationale of Sample v. Diecks, 885 F.2d 1099 (3rd Cir. 1989), a case in which the plaintiff, a former convict, was mistakenly imprisoned for nine months beyond the end of his sentence due to the error of a records officer. In remanding for further findings on the supervisory liability of the warden for the failings of the records officer, the Third Circuit noted the usefulness of showing a pattern of similar injuries in demonstrating the

20

supervisor's deliberate indifference to a known risk, "[T]here are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Carter, 181 F.3d at 357 (quoting Sample v. Diecks, 885 F.2d at 118).

Taking all this Third Circuit precedent together, it is apparent that Plaintiff Tim Ward has adequately pled a supervisory liability § 1983 claim. Reviewing ¶83 of the Complaint, in the context of the numerous preceding paragraphs setting forth the underlying facts (as discussed in the Statement of Facts in this brief), demonstrates that all that can be done at this pre-discovery stage of the case has, in fact, been done.

E.    Plaintiff has adequately pled a substantive due process claim asserting a state-created danger.

It is unresolved in the Third Circuit whether the protections afforded under the Due Process Clause to a person in custody might exceed those afforded under the Eighth Amendment right to be free from cruel and unusual punishment, see for example Natale v. Camden County Correctional Facility, 318 F.3d 575 (3rd Cir. 2003) at footnote 5. For that reason alone, the state-created danger allegations of Count IV of the Complaint, and related "special relationship" claims that are encompassed therein and/or could be added in an amended complaint, should not be dismissed at this stage. Although defendants suggest, at pages 15-16 of the DOC brief, that the field has been subsumed by Eighth Amendment analysis, such is not the case, as shown by the following passage from County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), quoting from DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989):

> "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic needs – e.g. food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on the state action set by the . . . Due Process Clause." Deshaney v. Winnebago County Dept. of Social Servs., 489 U.S., at 199-200, 109 S.Ct., at 1005 (citation and footnote omitted).

118 S.Ct. at 1719.

The DeShaney opinion is the fount from which the state-created danger doctrine (and the related "special relationship" doctrine) has emanated, see discussion in Kniepp v. Tedder, 95 F.3d 1199 (3rd Cir. 1996) at 1204-1211, and see also recent application of the state-created danger doctrine in a non-prison context in Rivas v. City of Passaic, 365 F.3d 181 (3rd Cir. 2004). Insofar as defendants have not challenged the application of the state-created danger doctrine on its merits, plaintiff reserves the right to respond to any such challenge (and to discuss how such doctrine applies given the specific facts of the instant matter), but based upon the above case law, the challenge of defendants on the ground that due process analysis is subsumed by Eighth Amendment analysis fails.

   *F.    Plaintiff agrees that he has not adequately pled a conspiracy claim.*

   Counsel for defendants has suggested that Mr. Ward has inadequately pled the underlying facts constituting conspiracy. While this suggestion would probably fail insofar as the allegations of conspiracy are adequate and the details would await discovery, plaintiff Ward has recognized that his conspiracy claim fails on another ground, specifically this: although the language of the statute does not expressly require anything other than a conspiracy to violate civil rights, prior cases "have limited liability under that clause by imposing two conditions not found in the terms of the text. An

22

actionable conspiracy must have some racial or perhaps other class-based motivation" and the right

must be one secured not only against official infringement but against private action as well, see

opinion of Justice Souter (concurring and dissenting in part on other grounds) in Bray v. Alexandria

Women's Health Clinic, 506 U.S. 263, 113 S.Ct. 753, 769-770, 122 L.Ed.2d 34 (1993). Because we

cannot assert a class-based motivation that is supported by the case law, our claim on this point

fails.

G.    *As to Eleventh Amendment immunity, sovereign immunity, and qualified immunity.*

Individual defendants are sued in their individual capacities, and not in their official

capacities, so that Eleventh Amendment immunity is not an issue with regard to such individual

defendants.

As to the Eleventh Amendment liability of the DOC, a subdivision of the state may or may

not be found to be an "alter ego" or "arm" of the state, for purposes of Eleventh Amendment

analysis. To make such a determination, the Court must apply a three-part inquiry, delineated in

Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140 (3rd Cir. 1995):

> (1) whether, in the event the plaintiff prevails, the payment of the
> judgment would come from the state (this includes three considerations:
> whether the payment will come from the state's treasury, whether the
> agency has sufficient funds to satisfy the judgment, and whether the
> sovereign has immunized itself from responsibility for the agency's
> debts); (2) the status of the agency under state law (this includes four
> considerations: how state law treats the agency generally, whether the
> agency is separately incorporated, whether the agency can sue and be sued
> in its own right, and whether it is immune from state taxation); and (3)
> what degree of autonomy the agency enjoys.

54 F.3d at 1144.

Based upon the factual record as it currently exists (essentially non-existent on this point), there is

an insufficient factual basis to conclude that the DOC qualifies as an alter ego or arm of the State of

23

Delaware, and the DOC's motion to dismiss is premature. *See also* Carter v. City of Philadelphia, 181 F.3d. 339, 347-355 (3rd Cir. 1999).

Should the DOC attempt to introduce additional and new evidence, and additional and new argument, on this point in their Reply Brief, plaintiff reserves the right to respond in a supplemental brief.

Despite the reference in the heading to section G of the DOC Brief (page 16) identifying "sovereign immunity" as an affirmative defense, defendants render no argument on this point. Nor could they, given the federal claims that have been pled. In any event, plaintiff reserves the right to respond, should defendants add to their argument.

With regard to the argument put forth by defendants asserting qualified immunity, such argument is entirely misplaced. The Eighth Amendment rights asserted by Mr. Ward are clearly established, and the deliberate indifference analysis that is at the heart of both the assertions as to lack of medical care and to the threat of violence from another inmate rise or fall on their merits, and not on the application of qualified immunity analysis.

*H.    As to Respondeat Superior.*

Plaintiff is not relying upon the doctrine of respondeat superior. As to the issue of the burden of alleging specific conduct on the part of each defendant, as raised by defendants in section H of the DOC Brief, the Plaintiff is limited at this stage of the matter by the absence of discovery; he has pled all the facts within his control at this time.

## CONCLUSION

Defendants have been accused of significant wrongdoing in this matter: they failed to protect Mr. Ward from the vicious attack from inmate Johnson; they failed to respond properly to Mr. Ward's medical needs; and they retaliated against Mr. Ward when he spoke out about his difficulties. The claims as to these matters have been properly pleaded in the Complaint, and no qualified immunity insulates defendants from the reach of justice. Thus, for all of the reasons set forth herein, plaintiff submits that the motion to dismiss filed by the defendants should be denied.

Respectfully submitted,

Plaintiff, TIMOTHY WARD

By his attorneys:

Jeffrey K. Martin, Esquire
Timothy J. Wilson, Esquire
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
Atty. ID No. 2407

Herbert G. Feuerhake, Esquire
The Law Office of Herbert G. Feuerhake
521 West Street
Wilmington, Delaware 19801
(302) 658-6101
Atty. ID No. 2590

DATED:  February 22, 2005

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1391(KAJ) |
| | ) |
| STANLEY TAYLOR; PAUL HOWARD; | ) |
| THOMAS CARROLL; JOHN SALAS; | ) JURY TRIAL DEMANDED |
| JESSICA DAVIS-BARTON; CERTAIN | ) |
| UNKNOWN  INDIVIDUAL EMPLOYEES OF | ) |
| THE STATE OF DELAWARE DEPARTMENT | ) |
| OF CORRECTION; and STATE OF DELAWARE | ) |
| DEPARTMENT OF CORRECTION, | ) |
| | ) |
| Defendants. | ) |

### CERTIFICATE OF SERVICE

I, Herbert G. Feuerhake, Esquire, do hereby certify that two (2) true and correct

copies of the foregoing *Plaintiff's Answering Brief to Defendants' Motion to Dismiss*

were delivered by hand, on February 22, 2005 to the following:

Michael F. Foster, Esquire
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, DE  19801

THE LAW OFFICE OF
HERBERT G. FEUERHAKE

Herbert G. Feuerhake (DE ID #2590)
521 West Street
Wilmington, DE  19801