## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,         )
                                )
       Plaintiff,        )
                                )
      v.               )    C.A. No.  04-1391 ***
                                )
STANLEY TAYLOR; PAUL HOWARD;    )
THOMAS CARROLL; JOHN SALAS;     )    JURY TRIAL DEMANDED
JESSICA DAVIS-BARTON; CERTAIN     )
UNKNOWN  INDIVIDUAL EMPLOYEES OF   )
THE STATE OF DELAWARE DEPARTMENT   )
OF CORRECTION; and STATE OF DELAWARE )
DEPARTMENT OF CORRECTION,     )
                                )
       Defendants.    )
      v.               )
                                )
FIRST CORRECTIONAL MEDICAL     )
DELAWARE, LLC          )
                                )
       Third-Party Defendant.   )

## APPENDIX TO PLAINTIFF'S ANSWERING BRIEF IN RESPONSE TO STATE DEFENDANT'S OPENING BRIEF IN SUPPORT FOR THEIR MOTION FOR SUMMARY JUDGMENT

**MARTIN & WILSON, P.A.**

_(signature)_

**JEFFREY K. MARTIN, ESQUIRE**
**TIMOTHY J. WILSON, ESQUIRE**
DE State Bar I.D. No.: 2407
DE State Bar I.D. No.: 4323
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681
jmartin@martinandwilson.com
_Attorneys for Plaintiff_

**LAW OFFICES OF
HERBERT G. FEUERHAKE**

_(signature)_

**HERBERT G. FEUERHAKE, ESQUIRE**
DE State Bar I.D. No.: 2590
521 West St
Wilmington, DE 19801
(302) 658-6101
herblaw@verizonmail.com
_Attorney for Plaintiff_

DATED:     January 23, 2008

## TABLE OF CONTENTS

Affidavit of Timothy Ward................................................................1

State Defendants' Rule 26(a)(1) Initial Disclosures filed August 7, 2006....................5

State Defendants' Supplementation of Initial Disclosures filed August 7, 2007...........11

State Defendants' Responses to Plaintiff's Second Set of Interrogatories
    filed October 15, 2007.................................................................13

Selected Documents from Inmate Robert Johnson's Prison File

      February 3, 2004 Interdisciplinary Progress Notes......................................28

      July 5, 2004 Physician's Order Sheet....................................................29

Plaintiff's Motion for Leave of Court to Add Lieutenant Paul Harvey
    as a Party Defendant......................................................................30

Defendants' Response in Opposition to Plaintiff's Motion for Leave of Court
    to Add Lieutenant Paul Harvey as a Party Defendant.................................42

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,

          Plaintiff,

    v.

STANLEY TAYLOR; PAUL HOWARD;
THOMAS CARROLL; JOHN SALAS;
JESSICA DAVIS-BARTON; CERTAIN
UNKNOWN INDIVIDUAL EMPLOYEES OF
THE STATE OF DELAWARE DEPARTMENT
OF CORRECTION; and STATE OF DELAWARE
DEPARTMENT OF CORRECTION,

          Defendants.

    v.

FIRST CORRECTIONAL MEDICAL
DELAWARE, LLC.

          Third-Party Defendant.

C.A. No. 04-1391 ***

JURY TRIAL DEMANDED

### AFFIDAVIT OF TIMOTHY WARD

STATE OF DELAWARE  :
              :   SS.
NEW CASTLE COUNTY  :

    I, TIMOTHY WARD, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.    I am the Plaintiff in the above-captioned matter.

2.    I am a resident of Maryland and have been since my release from custody on January 3, 2007. I have been continuously available for a deposition since the time of my release.

## B - 000001

1

3.    I was incarcerated at the time of this incident and was released on January 3, 2007.

4.    At the time of the assault on July 10, 2004, I was sitting on a picnic table having just finished some exercise.

5.    I was sitting with my back turned to the assailant Robert Johnson and did not see him coming.

6.    Johnson initially struck me on the right side of my face in the area of my right eye. He landed at least one other blow before I may have lost consciousness.

7.    I later learned from other inmates that Johnson straddled me and repeatedly and brutally punched and kicked me in the face and head.

8.    I did not know Robert Johnson before this incident nor did I have any reason to believe that he would attack me.

9.    As a result of the assault, I suffered the following injuries: a broken nose; dislocated jaw; damage to my right eye; a shattered eye socket; teeth knocked out and/or twisted and/or broken; numerous facial fractures; numerous facial lacerations; bloody masses; tissue damage and severe bruising.

10.   I am suffering from continuing psychological injuries as I continually relive the assault and my medical problems since the attack. I received no psychological counseling in prison following the attack.

11.   Except for having some limited dental surgery, I have not had any further surgical treatment to address the physical injuries I sustained.

12.    I have been advised by various medical providers that I need to have surgery on my tripod fracture, the septum in my nose, my jaw dislocation and various dental surgery to repair and replace the damage to my teeth.

13.    While incarcerated, I filed countless medical call slips and grievances with regard to the medical care that I sought and was denied.

14.    At various points during my incarceration, I have been deprived of food and medication. In particular, there were numerous times where I was denied pain medication.

15.    The intensity of my pain reached the highest levels of pain and was often intolerable.

16.    I have had constant eye pain and I am beset with what have been considered to be migraine headaches since the time of the incident.

17.    I believe I was the victim of retaliation when my family retained a lawyer on my behalf and that lawyer contacted the Governor and some of the news media.

18.    Until the time my family retained an attorney, I had not been examined by a physician outside of First Correctional Medical and the Kent General Hospital Emergency Room.

19.    Following the publication of an article in the Wilmington News Journal, guards began to call me various names.

20.    I believe that I was moved to the infirmary in early September 2004 due to my attorney's contact with the Governor and the news media. While in the infirmary, I was, at times, deprived of both food and medicine.

**B - 000003**

3

21.    I believe that I was removed to isolation in September 2004 due to the publicity of

my case rather than the dispute that I had with a fellow inmate. The other inmate

was not removed from the prison population and sent to isolation.


TIMOTHY J. WARD


SWORN AND SUBSCRIBED before me this ⟍7 day of January, 2008.


NOTARY PUBLIC


JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW


**B - 000004**

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TIMOTHY WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY TAYLOR, et al., | ) | C.A. No. 04-1391-KAJ |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL | ) | |
| DELAWARE, LLC, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## DEFENDANTS'/THIRD PARTY PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES

Defendants/Third Party Plaintiffs (hereinafter "Defendants") disclose the following information in accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure. These disclosures are based on information reasonably available to Defendants as of this date. Continuing investigation and discovery may alter these disclosures. Defendants reserve the right to supplement the information disclosed below if additional information becomes available.

By making these disclosures, Defendants do not represent that they are identifying every document, tangible thing, or witness possibly relevant to this claim. Nor do Defendants waive their right to object to the production of any document or tangible thing disclosed on the basis of any privilege, the work-product doctrine, relevancy, undue

burden or any other valid objection. Defendants disclosures represent a good faith effort to identify information they reasonably believe is required by Rule 26(a)(1).

Defendants' disclosures are made without waiver of: 1) the right to object on the grounds of competency, privilege, relevancy and materiality, hearsay or other proper ground, 2) the right to object to the use of any such information, for any purpose, in whole or in part, in this or any other action; and 3) the right to object on any and all proper grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

All of the disclosures set forth below are made subject to the above objections and qualifications.

Pursuant to Fed. R. Civ. P. 26(a), the Defendants make the following initial disclosures:

**1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

**RESPONSE:**

1.    Plaintiff, Timothy Ward, (Inmate SBI # 00501898);

2.    Defendants, Stanley Taylor, Paul Howard, Thomas Carroll, John Salas, Jessica Davis-Barton: all are employees/officials of Department of Correction.

3.    Medical Personnel employed by Third Party Defendant, First Correctional Medical Delaware, LLC, including but not limited to Dr. Sitta Alie and Terry Hastings, RN.

4.    Inmate, Robert L. Johnson, SBI #00366476.

5.    Dr. Norman Lippman.

6.    Dr. Rodolfo J. Rios.

7.    Joseph Belanger, Shift Commander, DCC.

8.    Aladino Rodriguez, Jr., Correctional Officer, DCC.

9.    Keith Lovett, former Correctional Officer, DCC.

10.   Veronica (Drummond) Sabb, Correctional Officer, DCC

In addition, Defendants reserve the right, pursuant to Rule 26(e) to supplement this list and identify additional witnesses. Defendants further reserve the right to identify and call any witnesses listed by other parties to this case.

**2. A copy of, or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

**RESPONSE:** [1]

1.    Medical file(s) and reports pertaining to Plaintiff, Inmate Timothy Ward, DOB 8/18/62.

2.    Department of Correction Institutional file and sentencing information for Plaintiff, Inmate Timothy Ward, DOB 8/18/62, SBI # 00501898.

3.    "Incident Reports" re: 7/10/04 assault involving Plaintiff Ward and Inmate Robert Johnson.

4.    Various letters, dated 8/4/04 – 8/31/04 from Ward family re: Timothy Ward's condition.

**3. A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or**

---

[1] Copies of all responsive non-privileged records currently in counsel's possession will be supplied upon execution of a pre-trial confidentiality agreement (pertaining to those records deemed confidential) among the parties.

other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

RESPONSE: Defendants/Third-party plaintiffs maintain that Third-party defendant, First Correctional Medical-Delaware, LLC, is liable for indemnification of Third-party plaintiffs to the full extent that any damages are assessed against and/or payable by Third-party plaintiffs in this matter. Such damages are not susceptible of determination at this time. Defendants/third-party plaintiffs reserve the right to supplement this response as appropriate during the course of discovery.

4. For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

RESPONSE: None.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

___/s/ Stephani J. Ballard____
STEPHANI J. BALLARD (#3481)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants/
DATED: August 7, 2006                          Third-party Plaintiffs.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY TAYLOR, et al., | ) | C.A. No. 04-1391-KAJ |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL | ) | |
| DELAWARE, LLC, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## NOTICE OF SERVICE

The undersigned certifies that on August 7, 2006, she caused the attached **DEFENDANTS'/THIRD PARTY PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES** to be delivered to the following persons via electronic mail:

### NAME AND ADDRESS OF RECIPIENT(S):

Jeffrey K. Martin, Esquire
Margolis Edelstein
1509 Gilpin Ave.
Wilmington, DE 19806

Dana Spring Monzo, Esquire
McCullough & McKenty
1225 N. King St., Ste. 1100
P.O. Box 397
Wilmington, DE 19899-0397

Herbert G. Feuerhake, Esq.
521 West St.
Wilmington, DE 19801

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

_/s/ Stephani J. Ballard_
Stephani J. Ballard, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants and Third-party Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RECEIVED

AUG 0 8 2007

TIMOTHY WARD,               )
                            )
            Plaintiff,      )
                            )
    v.                      )
                            )
STANLEY TAYLOR, et al.,     )     C.A. No. 04-1391-KAJ
                            )
            Defendants and  )
            Third-Party Plaintiffs, )
                            )
    v.                      )
                            )
FIRST CORRECTIONAL MEDICAL  )
DELAWARE, LLC,              )
                            )
            Third-Party Defendant )

## DEFENDANTS'/THIRD PARTY PLAINTIFFS' SUPPLEMENTATION

## OF INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(e)

Pursuant to Fed. R. Civ. P. 26(e), the Defendants/Third Party Plaintiffs make the following supplementary disclosures:

**1. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

**RESPONSE:**

11.  Joseph Richardson, Institutional Investigator, DCC

12.  Michael McCreanor, Shift Commander, DCC

13.  David Holman, Security Superintendent, DCC

14.  Nicole (McEnaney) Sroka, Correctional Officer, DCC

15.  Paul Harvey, Correctional Officer, DCC

In addition, Defendants reserve the right, pursuant to Rule 26(e) to supplement this list and identify additional witnesses. Defendants further reserve the right to identify and call any witnesses listed by other parties to this case.

**2. A copy of, or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

**RESPONSE:**

To date Defendants/Third Party Plaintiffs have produced documents Bates numbered D00001 – D00631 as well as medical records from the following medical providers who have evaluated or treated plaintiff: Dr. Cahoon, Dr. Fucci, Dr. Howard, Dr. Larned and Dr. Lippman.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**


    /s/ Stephani J. Ballard
STEPHANI J. BALLARD (#3481)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants/
Third-party Plaintiffs.

DATED: August 7, 2007

**B - 000012**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY WARD, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 04-1391 *** |
| | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| STANLEY TAYLOR; et al., | ) |
| | ) |
| Defendants and Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST CORRECTIONAL MEDICAL | ) |
| DELAWARE, LLC., | ) |
| | ) |
| Third-Party Defendant. | ) |

## STATE DEFENDANTS' RESPONSES TO PLAINTIFF TIMOTHY WARD'S SECOND SET OF INTERROGATORIES

1.     Identify by name, address, phone number, location, date and persons present, all individuals who have been interviewed by you in connection with this matter and whether any documents or memoranda were prepared relating to that interview.

**ANSWER:**   Objection.   This interrogatory is vague, overbroad and calls for the production of information protected by attorney-client and work product privileges. Notwithstanding said objection, counsel for State Defendants has interviewed the named individual State Defendants as well as persons identified in State Defendants' initial disclosures and supplementation to initial disclosures.

2.    Identify each and every document, photograph, videotape, audiotape, or any other form of recording media, or other item of evidence that you intend to use in this lawsuit, for any purpose, including, but not limited to, cross-examination, during any pretrial or trial proceedings, either as exhibits, for purposes of impeachment, or as demonstrative evidence.

**ANSWER:**    Objection. This interrogatory is vague, overbroad and unduly burdensome and calls for production of materials protected by attorney-client and work product privileges. Notwithstanding said objection, all documents or other tangible items of evidence, other than documents/evidence unknown at this time which may become necessary for purpose of impeachment, have previously been produced to all parties in this litigation, as part of State Defendants' initial disclosures and responses to discovery requests. Plaintiffs will identify exhibits to be used at trial, at the appropriate time, on the pre trial order pursuant to the rules and orders of this court.

3.    Please state the basis for the inclusion of the following individuals in your Initial Disclosures and Supplemental Initial Disclosures, including disclosure of their specific factual knowledge which you contend is pertinent to any or all of Defendants' defense and/or Plaintiff's claims including damages:

(a)    Joseph Richardson, Institutional Investigator, DCC;

(b)    Michael McCreanor, Shift Commander, DCC;

(c)    David Holman, Security Superintendent, DCC;

(d)    Nicole (McEnaney) Sroka, Correctional Officer, DCC;

(e)    Paul Harvey, Correctional Officer, DCC;

(f)    Dr. Sitta Alie

(g)    Terry Hastings, R.N.

(h)    Dr. Norman Lippman

(i)    Dr. Rodolfo J. Rios

(j)    Joseph Belanger, Shift Commander, DCC

(k)    Aladino Rodriguez, Jr., Correctional Officer, DCC

(l)    Keith Lovett, Former Correctional Officer, DCC

(m)    Veronica (Drummond) Sabb, Correctional Officer, DCC

**ANSWER:**

Objection. This interrogatory is vague, overbroad, unduly burdensome and calls for production of materials protected by attorney-client and work product privileges. Notwithstanding said objection:

(a)    Joseph Richardson: Joseph Richardson is an institutional investigator at DCC who handles criminal incident investigations. Mr. Richardson investigated the incident where inmate Robert Johnson assaulted inmate Timothy Ward.

(b)    Michael McCreanor: Michael McCreanor was a shift commander on the day Timothy Ward was assaulted. He had not yet assumed duty, but was in his office at DCC at the time of the assault. McCreanor reported to the T-yard when Ward was being attended to by medical personnel. Someone from FCM requested that Ward be transported to the hospital by prison van, but McCreanor refused and required FCM to order an ambulance to transport Ward.

(c)    David Holman: Major David Holman is a security superintendent at DCC and also serves as the hostage negotiation team leader. Major Holman dealt with

Timothy Ward's family's request for various information following the assault on Ward. Major Holman also issued a memo to Warden Carroll, dated September 2, 2004, which has been produced to Plaintiffs at bates number D-00440.

(d)     Nicole (McEnaney) Sroka:  Ms. Sroka is a canine correctional officer at DCC.  She responded when the Code 4 was called following Johnson's assault on Ward.  She responded to the T yard area and saw Ward sitting (conscious) on the table.  She was a witness, but did not personally take any action.

(e)     Paul Harvey:  Lt. Paul Harvey responded to the area when the Code was called.  By the time he got there, Ward was walking to the infirmary.  Ward was not unconscious at any time Harvey was there.  Lt. Harvey was also outside the chow hall the morning of the assault, when inmate Robert Johnson spoke during chow hall, in contravention of the rules.

(f)     Dr. Sitta Alie:  Upon information and belief, one of the physicians employed by FCM who treated Timothy Ward at DCC.  State Defendants have no further information on Dr. Alie, other than any documentary records that have been produced.

(g)     Terry Hastings, R.N.:  Upon information and belief, one of the nurses employed by FCM who treated Timothy Ward at DCC.  State Defendants have no further information on Terry Hastings, R.N., other than any documentary records that have been produced.

(h)     Dr. Norman Lippman:  Upon information and belief, a non-FCM physician who treated and/or evaluated plaintiff.

(i)     Dr. Rodolfo J. Rios:  Upon information and belief, a non-FCM physician who treated and/or evaluated plaintiff.

(j)    Joseph Belanger:    Lt. Belanger was not working on the day in question. He interviewed several inmates about the assault on Ward and attempted to interview inmate Robert Johnson. He also interviewed Timothy Ward who could not identify his assailant at that time. Belanger completed an incident report which has been produced in discovery.

(k)    Aladino Rodriguez, Jr.:    CO Rodriguez wrote an Incident Report (Bates # D00378) on July 11, 2004 after he was approached by two inmates who told him they had witnessed the assault. CO Rodriguez was not himself a witness.

(l)    Keith Lovett: Keith Lovett is no longer employed by DCC, but was a correctional officer assigned to the T-area on the day of the assault. Counsel for State Defendants has not been able to make contact with Mr. Lovett.

(m)    Veronica (Drummond) Sabb:    CO Sabb was working in the W building yard at the time of the assault. The W yard is adjacent to the T yard. Someone from the T area alerted her that someone had been hurt and she proceeded to the T area and called a Code 4 for the injury. By the time she arrived in T-yard Ward was sitting up and was able to respond to her. Medical personnel arrived shortly after she called the code. Sabb completed an incident report which has been produced in discovery.

4.    Please state the entire factual basis for your denial of the allegations found in Paragraph 11 of the Complaint.

**ANSWER:**

Objection. This interrogatory is vague, overbroad and unduly burdensome and calls for production of materials protected by attorney-client and work product privileges.

**B - 000017**

Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Notwithstanding said objection, see D-00473 - 00477, previously produced.

5.    Please state the entire factual basis for your denial of the allegations found in Paragraph 14 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

6.    Please state the entire factual basis for your denial of the allegations found in Paragraph 15 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

7.    Please state the entire factual basis for your denial of the allegations found in Paragraph 17 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials.    Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint.  Defendants are not obliged to prove a negative.  Notwithstanding said objection, see nurse's note of Johnson's evaluation at the infirmary on 7/10/04.  Bates # D-00430.

8.    Please state the entire factual basis for your denial of the allegations found in Paragraph 25 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials.    Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint.  Defendants are not obliged to prove a negative.  Notwithstanding said objection, see response to Interrogatory #3 (re: Ward was not unconscious) and incident reports, Bates D-00379 - 380.

9.     Please state the entire factual basis for your denial of the allegations found in Paragraph 27 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials.     Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative. Notwithstanding said objection, see incident reports, Bates D00379 - 380.

10.     Please state the entire factual basis for your denial of the allegations found in Paragraph 30 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials.     Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.  Notwithstanding said objection, see response to Interrogatory #3 (re: transportation of Ward to emergency room) and incident reports (Bates D-00379- 380), and Emergency Room reports (Bates D00057 - 67).

11.    Please state the entire factual basis for your denial of the allegations found in Paragraph 31 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials.    Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint.    Defendants are not obliged to prove a negative.    Notwithstanding said objection, see response to Interrogatory #3 (re: transportation of Ward to emergency room).

12.    Please state the entire factual basis for your denial of the allegations found in Paragraph 35 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials.    Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint.    Defendants are not obliged to prove a negative.    In addition, the allegations in paragraph 35 regarding medical care are directed to the medical defendants.    Notwithstanding said objections, see medical/infirmary records previously produced, which speak for themselves.

13.    Please state the entire factual basis for your denial of the allegations found in Paragraph 41 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative. In addition, the allegations in paragraph 41 regarding medical care are directed to the medical defendants. Notwithstanding said objections, see records of Dr. Lippman, previously produced, which speak for themselves.

14.    Please state the entire factual basis for your denial of the allegations found in Paragraph 42 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative. In addition, the allegations in paragraph 42 regarding medical care are directed to the medical defendants. Notwithstanding said objections, see records of Dr. Lippman and FCM medical/infirmary records, previously produced, which speak for themselves.

15.    Please state the entire factual basis for your denial of the allegations found in Paragraph 53 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative. Notwithstanding said objection see Bates D-00432 - 438, previously produced.

16.    Please state the entire factual basis for your denial of the allegations found in Paragraph 54 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

17.    Please state the entire factual basis for your denial of the allegations found in Paragraph 55 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide

affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

18.    Please state the entire factual basis for your denial of the allegations found in Paragraph 56 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

19.    Please state the entire factual basis for your denial of the allegations found in Paragraph 62 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative. In addition, the allegations in paragraph 62 regarding medical care are primarily directed to the medical defendants. Notwithstanding said objections, see medical/infirmary records previously produced, which speak for themselves.

20.   Please state the entire factual basis for your denial of the allegations found in Paragraph 63 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

21.   Please state the entire factual basis for your denial of the allegations found in Paragraph 67 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative.

22.   Please state the entire factual basis for your denial of the allegations found in Paragraph 76 of the Complaint.

**ANSWER:**

Objection, this Request is vague, overbroad, unduly burdensome, and calls for the production of attorney-client privileged and work product materials. Furthermore, Plaintiff bears the burden of proof in this case, and it is his obligation to provide affirmative evidence supporting each and every allegation in his complaint. Defendants are not obliged to prove a negative. In addition, the allegations in paragraph 76 regarding medical care are directed to the medical defendants. Notwithstanding said objections, see Bates # D00201, previously produced.

> _/s/ Stephani J. Ballard_
> Stephani J. Ballard, I.D. #3481
> Deputy Attorney General
> Department of Justice
> Carvel State Building
> 820 N. French St, 6th Flr.
> Wilmington, DE 19801
> (302) 577-8400
> Attorney for State Defendants

DATED:        October 15, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY WARD, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 04-1391 *** |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| STANLEY TAYLOR; PAUL HOWARD; | ) | |
| THOMAS CAROLL; JOHN SALAS; JESSICA | ) | |
| DAVIS-PARTON; CERTAIN UNKNOWN | ) | |
| INDIVIDUAL EMPLOYEES OF THE STATE | ) | |
| OF DELAWARE DEPARTMENT OF | ) | |
| CORRECTION; and STATE OF DELAWARE | ) | |
| DEPARTMENT OF CORRECTION. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

I hereby certify that on October 15, 2007, a true and correct copy of the *State*

*Defendants' Responses to Plaintiff Timothy Ward's Second Set of Interrogatories* was

served upon the following counsel of record via electronic mail:

| | |
|---|---|
| Jeffrey K. Martin, Esquire<br>Martin & Wilson, P.A.<br>1508 Pennsylvania Avenue, Suite 1C<br>Wilmington, DE 19806 | Daniel McKenty, Esquire<br>Heckler & Frabizzio<br>P.O. Box 128<br>Wilmington, DE 19899-0128 |

/s/ Stephani J. Ballard
Stephani J. Ballard, I.D. #3481
Deputy Attorney General
Department of Justice
Carvel State Building
820 N. French St, 6th Flr.
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

B - 000027

## INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | DISCIPLINE | NOTES SHOULD BE SIGNED WITH NAME AND TITLE |
|------|------|-----------|---------------------------------------------|
| 9/3/04 | 1040 | | I/m brought to the Clinic by 2 security officer for "self inflicted injury" & injury sustained after jumping off window. I/m reported injury on palms from repeated trauma using "pen" (O) Vs 97.5, P139, RR8 BP 178/102, very anxious & restless. Skin warm & diaphoretic. Small amt of blood noted from facial abrasions on forehead. Lacerations noted on palms bilately. Rt palm laceration deeper than Lt palm. Areas cleansed c̄ ½ strength H₂0₂ & topple antibiotic oint applied to facial abrasions. Dr Alie to evaluate Rt palm laceration for possible stitching but I/m became agitated & combative. Had to be restrained by 4⁺ security officers. & sent to infirmary ————— J Chuko np C |

| AME-Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|----------|-------|--------|--------------------|-----------|-----------|
| | | | | | |

FCM-002

**INTERDISCIPLINARY PROGRESS NOTES**
☐ Continued on Reverse

# PHYSICIAN'S ORDER SHEET

**ORDERS:** Another brand of a generically equivalent product identical in dosage form and content or active ingredient may be administered unless checked.

✓ **WRITE OR IMPRINT PATIENT INFORMATION BELOW**

NAME _Johnson, Robert_

ALLERGIES _NKDA_

ID _Field 4576_  DOB _10/09/76_

START 7-15-04    1730

Give Ativan 2mg, Haldol 5mg, and
Cogentin 2mg IM NOW

VO Dr. Hague / Maria Lamas LPn

PROVIDER'S SIGNATURE _____  DATE/TIME

## START NEW ORDERS BELOW

START 7-15-04    1920

Give Ativan 2 mg q 6 hours IM PRN
X 24 hours. Also give Ativan 1mg
Haldol 5mg, Cogentin 1mg IM q 8° PRN
until evaluated by psychiatrist

TVO Dr. Ilse / Maria Lamas LPn

PROVIDER'S SIGNATURE _____  DATE/TIME

## START NEW ORDERS BELOW

START    @   7-15-04    2230

1. Remove one restraint for
15 mins every 2 hrs, alternate
restraint release every
time, ex: ® hand then ℗ hand
then ℗ leg then ® leg then ® hand
2. Security and medical to be in
observation during release.
3. Offer P.O. fluids and assist
℗ toileting every 2 hrs during
restraint checks.

PROVIDER'S SIGNATURE _____  DATE/TIME

7/15/11 @ 2315   24°

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,                                      )
                                                   )
              Plaintiff,                           )
                                                   )
       v.                                          )      C.A. No. 04-1391 ***
                                                   )
STANLEY TAYLOR; PAUL HOWARD;                       )
THOMAS CARROLL; JOHN SALAS;                        )      JURY TRIAL DEMANDED
JESSICA DAVIS-BARTON; CERTAIN                      )
UNKNOWN  INDIVIDUAL EMPLOYEES OF                   )
THE STATE OF DELAWARE DEPARTMENT                   )
OF CORRECTION; and STATE OF DELAWARE               )
DEPARTMENT OF CORRECTION,                          )
                                                   )
              Defendants.                          )

## NOTICE OF MOTION

TO:    Stephani J. Ballard, Esquire
       Deputy Attorney General
       820 North French Street, 6th Floor
       Wilmington, DE 19801

       PLEASE TAKE NOTICE, that the undersigned attorney will present the attached

*Motion to Leave Court to Amend the Complaint to Add Lieutenant Paul Harvey as a*

*Party Defendant* at the convenience of the Court.


   /s/   *Jeffrey K. Martin*                       /s/   *Herbert G. Feuerhake*
JEFFREY K. MARTIN, ESQUIRE                      HERBERT G. FEUERHAKE, ESQUIRE
DE Bar I.D. No.: 2407                           DE Bar I.D. No.: 2590
Martin and Wilson, P.A.                         Herbert G. Feuerhake
1508 Pennsylvania Ave                           521 West St
Wilmington, DE 19806                            Wilmington, DE 19801
(302) 777-4681                                  (302) 658-6101
jmartin@martinandwilson.com                     herblaw@verizonmail.com
*Attorneys for Plaintiff*                       *Attorneys for Plaintiff*


DATED:      December 7, 2007


## B - 000030

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,                                    )
                                                 )
           Plaintiff,                            )
                                                 )
    v.                                           )      C.A. No. 04-1391 ***
                                                 )
STANLEY TAYLOR; PAUL HOWARD;                     )
THOMAS CARROLL; JOHN SALAS;                      )      JURY TRIAL DEMANDED
JESSICA DAVIS-BARTON; CERTAIN                    )
UNKNOWN  INDIVIDUAL EMPLOYEES OF                 )
THE STATE OF DELAWARE DEPARTMENT                 )
OF CORRECTION; and STATE OF DELAWARE             )
DEPARTMENT OF CORRECTION,                        )
                                                 )
           Defendants.                           )

## MOTION FOR LEAVE TO AMEND THE COMPLAINT TO ADD LIEUTENANT PAUL HARVEY AS A PARTY DEFENDANT

Pursuant to Federal Rule of Civil Procedure 15, Plaintiff Timothy Ward, through

his attorneys, hereby moves this Honorable Court for leave to Amend the Complaint to

add Paul Harvey as a party defendant for the following reasons:

    1.    This action was initiated by Plaintiff Timothy Ward in October 2004 and

was assigned to Judge Kent Jordan.

    2.    Plaintiff was beaten by an inmate who was suffering from mental

disorders and was permitted to go to the outside recreational area where he struck

Mr. Ward without warning.

    3.    Plaintiff initially named as Defendants: Stanley Taylor; Paul Howard;

Thomas Carroll; John Salas; Jessica Davis-Barton; and "certain unknown

individual employees of the State of Delaware Department of Correction."  In

**B - 000031**

addition, the State of Delaware Department of Correction was named as a Defendant.

4.  The parties exchanged written discovery as well as deposition testimony.

5.  While Lieutenant Paul Harvey was identified by Defendants as a Department of Correction employee with knowledge of the events, the extent of Lieutenant Harvey's involvement with the facts and circumstances that led to Plaintiff's beating was unknown until the conclusion of discovery when the deposition of Department of Correction Officer Sean Lovett was taken on October 24, 2007.

6.  Officer Lovett testified and gave information for the first time to show that the assault on Tim Ward "could have been prevented." (Lovett deposition, 66 attached hereto as Exhibit A). Lovett described how after seeing inmate Johnson act out at chow hall (inmate Johnson was the inmate who attacked Tim Ward), Lovett went directly to Lieutenant Paul Harvey to describe to Harvey Lovett's concerns about Johnson's condition saying, "He's going to bust loose. Something is going to go down." (Lovett deposition, 66). Lovett further told Lieutenant Harvey that, "this dude is going to go crazy. I don't want to be around when it happens." Lovett cautioned Harvey, "you better do something." (Lovett deposition, 66).

7.  Lovett testified that he had planned to keep this knowledge of his interaction with Lieutenant Harvey to himself but decided that he would not hide anything during his deposition. (Lovett Deposition, 66, 67, 68) Asked about

Lieutenant Harvey's response to Officer Lovett's expressions of concerns, Lovett said that, "He kind of blew it off." (Lovett deposition, 68).

8.     The testimony from Officer Lovett reveals that Lieutenant Paul Harvey was informed of inmate Johnson's erratic behavior and "blew it off" rather than taking affirmative action that would have prevented inmate Johnson from being released into the outside recreational yard where he assaulted Mr. Ward.

9.     Plaintiff respectfully makes this request for leave to add this defendant because Plaintiff could not have reasonably known the allegations of the involvement of Lieutenant Paul Harvey until the close of discovery when Officer Lovett's deposition was taken.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant leave to amend the Complaint to add Paul Harvey as a party defendant in this action.

Respectfully submitted,


/s/    *Jeffrey K. Martin*
JEFFREY K. MARTIN, ESQUIRE
DE Bar I.D. No.: 2407
Martin and Wilson, P.A.
1508 Pennsylvania Ave
Wilmington, DE 19806
(302) 777-4681
jmartin@martinandwilson.com
*Attorneys for Plaintiff*

/s/    *Herbert G. Feuerhake*
HERBERT G. FEUERHAKE, ESQUIRE
DE Bar I.D. No.: 2590
Herbert G. Feuerhake
521 West St
Wilmington, DE 19801
(302) 658-6101
herblaw@verizonmail.com
*Attorneys for Plaintiff*


DATED:      December 7, 2007


**B - 000033**

# EXHIBIT A

Keith F. Lovett

65

1   in chow hall with regard to Johnson speaking out the

2   way he did?

3           MS. BALLARD:  Objection to the form.

4    A.   I don't understand what your question is.

5    Q.   Did you make any incident reports or any type

6   of report to any superiors as a result of observing

7   Robert Johnson in chow hall?

8    A.   No, I did not.

9    Q.   Is there any reason why you did not?

10    A.   It wasn't worth it.  It wasn't worth the effort

11   for nothing to happen.

12    Q.   I'm sorry?

13    A.   It wasn't worth the effort for nothing to

14   happen and it would just have been more paperwork and

15   more aggravation for me.  Sometimes you got to let

16   things go.

17           Do you know what?  You guys forgot a big

18   piece of what happened in the whole story and I'm

19   going to drop it down right now what happened.  So

20   this is true and honestly when this whole thing, when

21   I found out that I would have to come here -- I don't

22   support inmates by any means.  I don't support nothing

23   about inmates.

24    Q.   You don't support Tim Ward, do you?

Keith F. Lovett

66

1          MS. BALLARD:  Objection to the form.

2      A.    As far as you made the statement that Tim

3   considers me a friend, I'm not a friend to any inmate.

4              What happened that day was wrong.  It

5   could have been prevented.  After that incident

6   happened, I went to Lieutenant Harvey, told Lieutenant

7   Harvey "This guy's got some problems.  This dude's got

8   some major fucking problems.  He's going to bust

9   loose.  Something is going to go down."

10     Q.    Excuse me.  But tell me, when did you see

11  Lieutenant Harvey?  Right after this happened?

12     A.    Right after.  When the inmates were brought

13  back to the building, I went to Lieutenant Harvey and

14  said, "Lieutenant Harvey, this dude's a problem.  This

15  dude is going to go crazy.  I don't want to be around

16  when it happens."  I said, "You better do something,"

17  in which case C/O Dunn took Robert Johnson over to the

18  infirmary.  The infirmary said there was nothing wrong

19  with him; he was fine.  He went back to the building

20  and then did what he did.

21              And I don't know if you guys have that on

22  record, if you even knew that that had happened, but

23  that was something that I really had planned to keep

24  to myself, but being that I'm here I don't want to

Keith F. Lovett

67

1    come off that I'm hiding anything or anything.  And as

2    much as I don't support inmates suing anybody and I

3    can't stand fucking inmates, to be honest with you,

4    I'm not going to sit here and bullshit through this

5    thing.  I'm going to tell you the truth.  I'm going to

6    tell you exactly what happened no matter who stands to

7    gain the most out of this situation.

8              That situation could have been prevented

9    and I'm just going on record as saying that.  No

10   matter what happens here, I want to be honest and I

11   want to be truthful to the whole situation and that's

12   it because I've been struggling with that situation

13   for a while.

14   Q.  Well, we all appreciate your candor.  We know

15   it's a difficult situation for you to keep inside and

16   appreciate that you can put it out on the table for

17   us.

18             Let me ask some follow-up questions, if I

19   may.

20   A.    Okay.

21   Q.    What was Harvey's first name?

22   A.    Lieutenant.

23   Q.    Male or female?

24   A.    Male.

Keith F. Lovett

68

1    Q.    Did he have a first name other than lieutenant?

2    A.    I don't know.

3    Q.    What was Harvey's response to your great

4    concern that you expressed to him immediately after

5    this happened?

6    A.    He kind of blew it off.

7    Q.    Did he acknowledge that he knew anything about

8    Robert Johnson?

9    A.    Yes.  He probably, he probably had said

10   something to the fact that he was just, he was just

11   talking shit and he was, you know, just, just, just

12   another crazy inmate.

13   Q.    How long did you talk with Lieutenant Harvey?

14   A.    Just for a couple of minutes.  The lieutenant

15   would be out on the boulevard at the boulevard gate.

16          I distinctly remember going back and going

17   back after the inmates were secured in the building

18   and told Harvey what had happened.  I was more alarmed

19   at the fact that Robert Johnson was kind of glassy

20   eyed and he kind of was real shitty looking when the

21   incident had taken place in the chow hall.  And I

22   didn't feel uncomfortable or anything with him in the

23   chow hall.  I did feel like, you know, he could have

24   incited other inmates to misbehave, but fortunately

Keith F. Lovett

69

1  the situation went very smoothly after that. I think

2  that the other inmates kind of laughed at him and the

3  fact that he was misbehaving and acting the way that

4  he was. I think that I showed great restraint in

5  dealing with what he was doing in the chow hall, but

6  his glassy-eyed look and his look of craziness really

7  brought me to want to contact Lieutenant Harvey on the

8  situation.

9          I kind of felt like sometimes people don't

10 want to do things, don't want to write incident

11 reports, people don't want to aggressively deal with

12 situations as they happen in the form of paperwork,

13 removing an inmate or whatever. And I felt like it

14 was important that I went to Harvey and let him know

15 that this guy was definitely going to be a problem and

16 somebody needed to do something.

17  Q.   I have a few more questions, but I'm just going

18 to take a moment, if I can. If you need to use the

19 bathroom or get some water, I'll be back in a moment.

20 Okay?

21  A.   Okay.

22          (A brief recess was taken.)

23 BY MR. MARTIN:

24  Q.   Going back to what Johnson said to you in chow

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2007 a true and correct copy of the *Motion*

*for Leave to Amend the Complaint to Add Lieutenant Paul Harvey as a Party*

*Defendant,* was filed and served via CM/ECF upon the following counsel of record:

Stephani J. Ballard, Esquire
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, DE 19801


_/s/___*Jeffrey K. Martin*_____          _/s/___*Herbert G. Feuerhake*_____
JEFFREY K. MARTIN, ESQUIRE          HERBERT G. FEUERHAKE, ESQUIRE
DE Bar I.D. No.: 2407                          DE Bar I.D. No.: 2590
Martin and Wilson, P.A.                        Herbert G. Feuerhake
1508 Pennsylvania Ave                        521 West St
Wilmington, DE 19806                         Wilmington, DE 19801
(302) 777-4681                                    (302) 658-6101
jmartin@martinandwilson.com            herblaw@verizonmail.com
*Attorneys for Plaintiff*                        *Attorneys for Plaintiff*



DATED:        December 7, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,                                              )
                                                          )
        Plaintiff,                                 )
                                                          )
      v.                                             )     C.A. No. 04-1391 ***
                                                          )
STANLEY TAYLOR; PAUL HOWARD;                              )
THOMAS CARROLL; JOHN SALAS;                               )     JURY TRIAL DEMANDED
JESSICA DAVIS-BARTON; CERTAIN                             )
UNKNOWN  INDIVIDUAL EMPLOYEES OF                          )
THE STATE OF DELAWARE DEPARTMENT                          )
OF CORRECTION; and STATE OF DELAWARE )
DEPARTMENT OF CORRECTION,                                 )
                                                          )
        Defendants.                                )

### ORDER

    AND NOW, TO WIT, THIS _____ day of _____, 2007, this Court

having duly considered Plaintiff's Motion to Leave Court to Amend the Complaint to

Add Lieutenant Paul Harvey as a Party Defendant;

    IT IS HEREBY ORDERED that Plaintiff's Motion to Leave Court to Amend the

Complaint to Add Lieutenant Paul Harvey as a Party Defendant is GRANTED.


                                     _____
                                     **JUDGE**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TIMOTHY WARD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| STANLEY TAYLOR, et al., | ) ) | C.A. No. 04-1391-*** |
| Defendants and Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FIRST CORRECTIONAL MEDICAL DELAWARE, LLC, | ) ) ) | |
| Third-Party Defendant | ) ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT TO ADD LT. PAUL HARVEY AS A PARTY DEFENDANT

State Defendants, by and through counsel, hereby move this Honorable Court to deny Plaintiff's "Motion for leave to amend the Complaint to add Lt. Paul Harvey as a party defendant," filed in this matter on December 7, 2007, for the reasons set forth herein:

1.    Plaintiff's original Complaint, asserting §1983 violations, was filed with this Court on or about October 26, 2004. (D.I. 1). The claims rose out of an inmate on inmate assault which took place at Delaware Correctional Center (DCC) on July 10, 2004. The named individual defendants are: Commissioner of Correction, Stanley Taylor; Bureau Chief, Paul Howard; Warden Thomas Carroll; Correctional Officer John Salas and Correctional Counselor Jessica Davis-Barton. A scheduling order was issued by the Court on July 28, 2006, which provided that all motions to join

1

other parties, or to amend the pleadings must be filed by October 1, 2006. No amendments to the Complaint were timely filed. Plaintiff filed the instant motion to amend on December 7, 2007, a full three years after the Complaint was filed.

2.      The statute of limitations on injury claims in Delaware, including claims sounding under 42 U.S.C. §1983, is two years. 10 Del.C. §8107. Thus, the statute of limitations in this case expired on July 10, 2006.

3.      Plaintiff's Motion to Amend to add Lieutenant Paul Harvey as an additional defendant was filed 17 months after the expiration of the statute of limitations, and 14 months after the court-ordered last day to amend pleadings. In fact, Plaintiff's motion was filed only one day before the commencement of summary judgment proceedings. State Defendants' Motion and Opening Brief for Summary Judgment were filed on December 10, 2007. (D.I. 88-92). Plaintiff's Motion must be denied as futile, due to the bar of the statute of limitations, undue prejudice and delay, and failure to meet the requirements for relation back of an amendment pursuant to F.R.C.P. 15(c).

4.      As a preliminary matter, Plaintiff's Motion to Amend does not comply with Local Rule 15.1, which requires that a party moving to amend must attach the proposed amended pleading, indicating clearly the manner in which the Complaint would be amended. Plaintiff filed only a Motion to Amend, describing the testimony of a non-party witness about that witness' interaction with Lt. Harvey. Plaintiff did not attach a proposed amended complaint, nor indicate what allegations Plaintiff would assert against Lt. Harvey. However, as described below, *any* purported amendment to the Complaint to add this defendant would be futile, and therefore the Motion should be denied by this Court.[1]

---

. 1 Plaintiff also fails to comply with Local Rule 7.1.1, which requires a statement showing a reasonable attempt to reach agreement on the issue presented. While Plaintiff's counsel did inform Defendants' counsel verbally of his

5.     The grant or denial of a motion for leave to amend a complaint is a matter within the discretion of the trial court. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). While leave to amend should be "freely given [by the Court] when justice so requires" (Rule 15(a)), the United States Supreme Court has held that denial is appropriate in cases where the amendment is the result of "undue delay, bad faith or dilatory motive on the part of movant . . . . undue prejudice to the opposing party, [or] futility of amendment." Foreman v. Davis, 371 U.S. 178, 182 (1962); see also In re Burlington, supra; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). In this case, the attempted addition of a new defendant 17 months after the expiration of the statute of limitations is futile, and Plaintiff does not meet the criteria for "relation back" of his amendment under FRCP 15(c).

6.     Amendment "futility" is met where the complaint, even if amended, would fail to state a claim upon which relief could be granted. In re: Burlington, 114 F.3d at 1434. The Third Circuit has held that the failure to overcome the time bar of a statute of limitations renders a proposed amendment futile. Cowell v. Palmer Township, 263 F.3d 286, 296 (3d Cir. 2001).

7.     There is no question that the statute of limitations in this case expired a year and a half prior to the Motion at issue here. Thus, claims (whatever they may be) brought against Lt. Harvey in 2007 for events that occurred in 2004 are moot and futile. Claims made outside the statute of limitations may only be maintained if Plaintiff can demonstrate "relation back" to the original Complaint under Rule 15(c). Even then, leave to amend is discretionary with the Court.

8.     Plaintiff cannot demonstrate that claims against Lt. Harvey "relate back" to the filing of the October 2004 Complaint. Rule 15(c) has 3 distinct, conjunctive, requirements, upon which

---

intent to file this motion, the requisite statement was not included in the pleading.

Plaintiff bears the burden of proof. <u>Singletary v. PA Dept. of Corrections</u>, 266 F.3d 186, 194 (3d Cir. 2001). Moreover, Plaintiff must demonstrate that all of these requirements were met within the period prescribed by FRCP 4(m)—which is 120 days from the date of filing of the original complaint. 266 F.3d at 193. The requirements of relation back under Rule 15(c) are:

- The proposed new claim must arise out of the same occurrence which is the subject of the original complaint. [Rule 15(c)(2)]. Defendants do not dispute that this element would be met; *and*

- The party to be brought in by the untimely amendment must have [within the 120 day period of Rule 4(m)] "received such notice of the institution of the action that [he] will not be prejudiced in maintaining a defense on the merits." The Third Circuit has held that this prong consists of two distinct subparts--(a) notice and (b) the absence of prejudice, *if* timely notice was proven--each of which must be satisfied. <u>Singletary</u>, 266 F.3d at 194; *and*

- The newly named party must have known, or should have known (again within the initial 120 day period) that "but for a mistake" the action would have been brought against him. <u>Id</u>.

9.      Plaintiff's motion does not even make an argument for relation back, or present any facts showing how Plaintiff would meet the three requirements of Rule 15(c). Nonetheless, and although it is not Defendants' burden to disprove these elements, it is plain that Plaintiff fails to meet both the second and third prong of the requirements for relation back under Rule 15(c).

10.     The affidavit of Paul Harvey is attached to this motion. (Exhibit "A"). Lt. Harvey avers that he did not find out that this lawsuit had been filed until May 2007. (*See* Harvey Aff. ¶3). Not only that, but Lt. Harvey was not even employed by DOC (and therefore not working at DCC) during the and beyond the entire 120-day time period after the suit was filed, when the requirements of Rule 15(c) would have to have been met.

11.     Lt. Harvey also avers that he never at any time, had reason to believe that he would be

4

named as a defendant in this lawsuit. Thus, the third prong, that the new party must have known that "but for a mistake" he would have been named as a defendant, is clearly not met.

12.    The fact that Lt. Harvey had no reason to believe he would be a defendant is also clear from the facts already set forth in discovery in this case. Plaintiff makes much of testimony from a former employee, Keith Lovett, who said he told Lt. Harvey that the inmate who assaulted Ward, Robert Johnson, had been acting "crazy" in chow hall that morning and that Lovett felt that "something is going to go down." (Lovett Depo. at 66). What Plaintiff does not point out, is the fact that after Lovett made these statements, Lt. Harvey had Robert Johnson immediately seen by the infirmary. Lovett himself testified to this fact: "[I] said 'Lieutenant Harvey, this dude's a problem . . . you better do something,' in which case C/O Dunn took Robert Johnson over to the infirmary. The infirmary said there was nothing wrong with him; he was fine." (Lovett at 66). Lovett further testified:

> Q. So you think you spoke to Harvey before Johnson went to the infirmary?
> A. Yes.
> Q. And I believe you said an Officer Dunn took --
> A. Took Robert Johnson to the infirmary and then probably ten minutes later brought him back.
> Q. Was that at your request that he took him to the infirmary?
> A. I would hope that my input helped in getting him looked at.
> Q. Do you know who told Officer Dunn to take Robert Johnson to the infirmary?
> A. I'm assuming it was Harvey.
> Q. And are you aware that Robert Johnson was seen by the infirmary?
> A. Yep. Yes.

(Lovett at 99-100). The record shows that a registered nurse at the infirmary examined and cleared Johnson to return back to his housing unit. On these facts, it is clear that Harvey responded reasonably to the information he was allegedly given by Lovett. Harvey was told an inmate had acted erratically and he had that inmate taken to the infirmary for evaluation. No reasonable fact

5

finder could find that such conduct would meet the "deliberate indifference" standard Plaintiff would have to prove to maintain his case against Harvey, even if he had been properly and timely named as a defendant. For this reason also, amendment to include Harvey as a defendant would be futile.

13.    A motion to amend should also be denied where the amendment is the product of "undue delay" or dilatory conduct on the part of the Plaintiff. Foreman v. Davis, 371 U.S. 178, 182 (1962). This is also present in the instant case. Plaintiff concedes that Defendants identified Lt. Harvey as a witness with knowledge, but contends that he could not have known the "extent" of Harvey's involvement until Keith Lovett's deposition on October 24, 2007.

14.    However, Plaintiff knew or should have known of the nature of Harvey's involvement, per Lovett[2], at least as early as February 27, 2007. On that date, State Defendants filed Responses to Plaintiff's First Request for Production of Documents. (D.I. 58). In that production was a personal email authored by Keith Lovett, which outlined his alleged interactions with Harvey that day, in almost the same manner as his deposition testimony and, actually, providing more detail. (D.I. 90, A-45-46; see also (D.I.91, A-172, identifying email as of 2/27/07). Lt. Harvey's name was also mentioned in an incident report produced with State Defendants' Initial Disclosures as early as September, 2006. (D.I. 91, A-142; D.I. 92, A-257). Thus (the futility/limitations bar aside), Plaintiff's conduct in waiting anywhere from 10 to 15 months to move to add this known witness as a defendant cannot be characterized as other than dilatory and "undue delay."

---

2 Defendants do not concede the veracity of any particular testimony or statements by Keith Lovett.

6

WHEREFORE, for the foregoing reasons, State Defendants respectfully request this Honorable Court DENY Plaintiff's "Motion for leave to amend the Complaint to add Lt. Paul Harvey as a party defendant." In the alternative, if the Court does not find that the amendment is barred as futile, Plaintiff's Motion to Amend should be stricken for non-compliance with Local Rule 15.1. Finally, if the Court should grant Plaintiff leave to an amended complaint at this late date, State Defendants hereby reassert, in full, the Motion for Summary Judgment and the arguments supporting that motion articulated in Defendant's Opening Brief (D.I. 88-92), in response to any and all claims which would be asserted against Lt. Paul Harvey.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE


/s/ Stephani J. Ballard
Stephani J. Ballard (I.D. No. 3481)
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

DATED: December 20, 2007

7

B - 000048

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TIMOTHY WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY TAYLOR, et al., | ) | C.A. No. 04-1391-*** |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL | ) | |
| DELAWARE, LLC, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## ORDER

AND NOW, this _____ day of _____, 200__, this Court having duly considered

Plaintiff's Motion to Amend Complaint to Add Lt. Paul Harvey as a Party Defendant, and

Defendants' Response thereto;

IT IS HEREBY ORDERED that Plaintiff's Motion is **DENIED.**

_____
J.

8

**B - 000049**

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on **December 20, 2007**, she caused the attached

*Defendants' Response in Opposition to Plaintiff's Motion to Amend Complaint to Add Lt.*

*Harvey as a Party Defendant* to be delivered to the following persons via CM/ECF:

### NAME AND ADDRESS OF RECIPIENT(S):

Jeffrey K. Martin, Esquire
Martin & Wilson, P.A.
1508 Pennsylvania Avenue, Suite 1C
Wilmington, DE 19806

Daniel McKenty, Esquire
Heckler & Frabizzio
P.O. Box 128
Wilmington, DE 19899-0128

Herbert G. Feuerhake, Esq.
521 West St.
Wilmington, DE 19801

/s/Stephani J. Ballard
Stephani J. Ballard, I.D. No. 3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
Attorney for State Defendants

9

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )
                                       )
STANLEY TAYLOR, et. al.,               )        C. A. No. 04-1391 ***
                                       )
      Defendants/Third Party           )
      Plaintiffs,                      )
                                       )
v.                                     )
                                       )
FIRST CORRECTIONAL MEDICAL             )
DELAWARE, LLC,                         )
                                       )
      Third-Party Defendant.           )

### Affidavit of Lieutenant Paul Harvey

1.      I have been employed by the State of Delaware Department of Correction since December, 1993. I currently hold the position of Correctional Lieutenant at the Delaware Correctional Center (DCC), and have held this position since approximately October 1, 2000. I left the employment of the Department of Correction for a one year period of approximately Oct. 1, 2004 until August 21, 2005, to work as a police officer for the City of Milford. I was rehired by DCC on approximately August 21, 2005.

2.      I recall an incident which occurred on July 10, 2004, in which an inmate, who I am told was Timothy Ward, was assaulted by another inmate. I had no personal knowledge of the incident itself, but I did take pictures of Mr. Ward's injuries after the assault when he was in the infirmary.

3.      I did not find out that Timothy Ward had filed a lawsuit until May of 2007, when an attorney from the Department of Justice met with me to discuss my recollection of the

B - 000051

matter. I was told that I was just a possible witness, not a defendant, in the matter. I have never read Mr. Ward's lawsuit and am not aware of who all of the defendants are.

4.      I had no reason, at any time, to believe that I would ever be named as a defendant in this lawsuit. I do not know why Mr. Ward would want to name me as a defendant at this time.

BE IT REMEMBERED that on this _____18_____ day of _____December_____, 2007, personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, **PAUL HARVEY**, who, being by me duly sworn according to law did depose and say that the foregoing statement is correct to the best of his knowledge, information and belief.

PAUL HARVEY

SWORN TO AND SUBSCRIBED before me on this _18_ day of _December_, 2007.

Notary Public



**WILCOX & FETZER LTD.**

In the Matter Of:

# Ward

## v.

## Taylor, et al.

### C.A. # 04-1391 (KAJ)

---

Transcript of:

Keith F. Lovett

October 24, 2007

---

Wilcox and Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: depos@wilfet.com
Internet: www.wilfet.com

B - 000053

Ward v. Taylor, et al.

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TIMOTHY WARD,                          )
                                       )
      Plaintiff,                  )
                                       )  Civil Action
  v.                                   )  No. 04-1391(KAJ)
                                       )
STANLEY TAYLOR; PAUL HOWARD;           )
THOMAS CARROLL; JOHN SALAS;            )
JESSICA DAVIS-BARTON; CERTAIN          )
UNKNOWN INDIVIDUAL EMPLOYEES OF        )
THE STATE OF DELAWARE DEPARTMENT       )
OF CORRECTION; and STATE OF            )
DELAWARE DEPARTMENT OF                 )
CORRECTION,                            )
                                       )
      Defendants,                 )
                                       )
  v.                                   )
                                       )
FIRST CORRECTIONAL MEDICAL             )
DELAWARE, LLC,                         )
                                       )
      Third-Party Defendant.      )


      Deposition of KEITH F. LOVETT taken
pursuant to notice at the law offices of Martin &
Wilson, 1508 Pennsylvania Avenue, Wilmington,
Delaware, beginning at 9:15 a.m., on Wednesday,
October 24, 2007, before Kurt A. Fetzer, Registered
Diplomate Reporter and Notary Public.


WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477
www.wilfet.com

Ward v. Taylor, et al.
Keith F. Lovett

66

1      MS. BALLARD: Objection to the form.
2   A. As far as you made the statement that Tim
3 considers me a friend, I'm not a friend to any inmate.
4      What happened that day was wrong. It
5 could have been prevented. After that incident
6 happened, I went to Lieutenant Harvey, told Lieutenant
7 Harvey "This guy's got some problems. This dude's got
8 some major fucking problems. He's going to bust
9 loose. Something is going to go down."
10   Q. Excuse me. But tell me, when did you see
11 Lieutenant Harvey? Right after this happened?
12   A. Right after. When the inmates were brought
13 back to the building, I went to Lieutenant Harvey and
14 said, "Lieutenant Harvey, this dude's a problem. This
15 dude is going to go crazy. I don't want to be around
16 when it happens." I said, "You better do something,"
17 in which case C/O Dunn took Robert Johnson over to the
18 infirmary. The infirmary said there was nothing wrong
19 with him; he was fine. He went back to the building
20 and then did what he did.
21      And I don't know if you guys have that on
22 record, if you even knew that that had happened, but
23 that was something that I really had planned to keep
24 to myself, but being that I'm here I don't want to

67

1 come off that I'm hiding anything or anything. And as
2 much as I don't support inmates suing anybody and I
3 can't stand fucking inmates, to be honest with you,
4 I'm not going to sit here and bullshit through this
5 thing. I'm going to tell you the truth. I'm going to
6 tell you exactly what happened no matter who stands to
7 gain the most out of this situation.
8      That situation could have been prevented
9 and I'm just going on record as saying that. No
10 matter what happens here, I want to be honest and I
11 want to be truthful to the whole situation and that's
12 it because I've been struggling with that situation
13 for a while.
14   Q. Well, we all appreciate your candor. We know
15 it's a difficult situation for you to keep inside and
16 appreciate that you can put it out on the table for
17 us.
18      Let me ask some follow-up questions, if I
19 may.
20   A. Okay.
21   Q. What was Harvey's first name?
22   A. Lieutenant.
23   Q. Male or female?
24   A. Male.

68

1   Q. Did he have a first name other than lieutenant?
2   A. I don't know.
3   Q. What was Harvey's response to your great
4 concern that you expressed to him immediately after
5 this happened?
6   A. He kind of blew it off.
7   Q. Did he acknowledge that he knew anything about
8 Robert Johnson?
9   A. Yes. He probably had said
10 something to the fact that he was just, he was just
11 talking shit and he was, you know, just, just, just
12 another crazy inmate.
13   Q. How long did you talk with Lieutenant Harvey?
14   A. Just for a couple of minutes. The lieutenant
15 would be out on the boulevard at the boulevard gate.
16      I distinctly remember going back and going
17 back after the inmates were secured in the building
18 and told Harvey what had happened. I was more alarmed
19 at the fact that Robert Johnson was kind of glassy
20 eyed and he kind of was real shitty looking when the
21 incident had taken place in the chow hall. And I
22 didn't feel uncomfortable or anything with him in the
23 chow hall. I did feel like, you know, he could have
24 incited other inmates to misbehave, but fortunately

69

1 the situation went very smoothly after that. I think
2 that the other inmates kind of laughed at him and the
3 fact that he was misbehaving and acting the way that
4 he was. I think that I showed great restraint in
5 dealing with what he was doing in the chow hall, but
6 his glassy-eyed look and his look of craziness really
7 brought me to want to contact Lieutenant Harvey on the
8 situation.
9      I kind of felt like sometimes people don't
10 want to do things, don't want to write incident
11 reports, people don't want to aggressively deal with
12 situations as they happen in the form of paperwork,
13 removing an inmate or whatever. And I felt like it
14 was important that I went to Harvey and let him know
15 that this guy was definitely going to be a problem and
16 somebody needed to do something.
17   Q. I have a few more questions, but I'm just going
18 to take a moment, if I can. If you need to use the
19 bathroom or get some water, I'll be back in a moment.
20 Okay?
21   A. Okay.
22      (A brief recess was taken.)
23 BY MR. MARTIN:
24   Q. Going back to what Johnson said to you in chow

18 (Pages 66 to 69)

Ward v. Taylor, et al.
Keith F. Lovett

**98**

1  we'll deal with it later, as long as he's not acting
2  violent, disorderly and threatening. It was brought
3  to me, whoever I spoke to, it was like, it was like
4  well, if he doesn't stand up, do you know what I mean,
5  like he wants to scrap or something, then let him,
6  just let him run his mouth and we'll deal with it
7  later.
8      Q. And so Lieutenant Harvey was not physically
9  there at the chow hall, correct?
10     A. No. There was another C/O in the chow hall
11  when that happened, I believe.
12     Q. Do you know who that was?
13     A. No, I do not. I know I wouldn't run a chow
14  hall by myself.
15         Actually, I have run chow halls by myself,
16  but at that time I think there was somebody in the
17  chow hall with me. I just don't recall who it was.
18     Q. So the information that Lieutenant Harvey got
19  he got from you by phone, correct?
20     A. Correct. Or I'm not 100 percent certain that
21  it was Harvey that I spoke with on the phone while I
22  was in the chow hall. I know I spoke to Harvey face
23  to face after the chow hall when I brought the inmates
24  back to the building and went back out and talked to

**99**

1  Harvey face to face.
2      Q. Do you know if you spoke with Harvey before or
3  after Robert Johnson went to the infirmary?
4      A. No.
5      Q. You're not sure?
6      A. No, I don't recall talking to him.
7      Q. You don't recall talking to Harvey?
8      A. Yeah.
9      Q. I thought you said you spoke to him.
10     A. After, after he went to the infirmary.
11     Q. So you think you spoke to Harvey before Johnson
12  went to the infirmary?
13     A. Yes.
14     Q. And I believe you said an Officer Dunn took –
15     A. Took Robert Johnson to the infirmary and then
16  probably ten minutes later brought him back.
17     Q. Was that at your request that he took him to
18  the infirmary?
19     A. I would hope that my input helped in getting
20  him looked at.
21     Q. Do you know who told Officer Dunn to take
22  Robert Johnson to the infirmary?
23     A. I'm assuming it was Harvey.
24     Q. And are you aware that Robert Johnson was seen

**100**

1  by the infirmary?
2      A. Yep. Yes.
3      Q. What's your understanding of what happened
4  there?
5      A. I think that in my opinion he went there for
6  five, ten minutes, the nurse said he was okay and sent
7  him back to the building. I was upset with that
8  personally because I felt that he needed more type of
9  attention and the way that he was behaving said he
10  needed more type of attention, but the nurse said he
11  was fine.
12         I also believe that he was not seen by a
13  psychologist. He was seen by a regular nurse who sent
14  him back to the building. I took that personal.
15  because I felt like I was going to have to deal with
16  him. I felt like he was a problem and that somebody
17  needed to make a decision about him that didn't make
18  the right decision with him and sent him back to the
19  building regardless if he did whatever he did
20  afterwards. I still felt like he was a problem and,
21  in fact, I remember talking to Dunn about how much
22  bullshit it was the fact that he got sent to the
23  infirmary and then got sent right back.
24     Q. You said they didn't make the right decision.

**101**

1  Do you mean the people at the infirmary?
2      A. Yes.
3      Q. And you earlier said that you thought this
4  incident could have been prevented.
5         Do you mean if the infirmary had taken
6  further action?
7      A. Yes. I think if he would have, if they would
8  have taken further action when he was in chow hall and
9  removed him out of the chow hall and dealt with him on
10  that level, something could have been prevented. I
11  think that the wheels in motion would have prevented,
12  at least it may have been somebody else but it
13  wouldn't have been Tim.
14     Q. What to you mean by it may have been somebody
15  else?
16     A. He might have snapped out at some other time,
17  but it wouldn't have been that time if somebody had
18  done something about the incident that was happening
19  in the chow hall and all the other things that led up
20  to the incident with Tim.
21     Q. So if medical personnel had held him for
22  observation, you think this would not have happened at
23  that time?
24     A. If I'm allowed to say in my personal opinion,

26 (Pages 98 to 101)

Wilcox and Fetzer, Ltd.    Registered Professional Reporters    302-655-0477

### CERTIFICATE OF SERVICE

I, Jeffrey K. Martin, the undersigned counsel for Plaintiff in the above-captioned case, hereby certify that the foregoing *Appendix to Plaintiff's Response to State Defendants' Opening Brief in Support for Their Motion for Summary Judgment* was filed via CM/EMF on January 23, 2008 to the following:

Stephani J. Ballard
Department of Justice
Carvel State Office Building
820 N French St
Wilmington, DE 19801

Daniel L. McKenty
Heckler & Frabizzio
800 Delaware Avenue, Suite 200
P.O. Box 128
Wilmington, DE 19899-0128

**MARTIN & WILSON, P.A.**

**JEFFREY K. MARTIN, ESQUIRE**
**TIMOTHY J. WILSON, ESQUIRE**
DE State Bar I.D. No.: 2407
DE State Bar I.D. No.: 4323
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681
jmartin@martinandwilson.com
*Attorneys for Plaintiff*

**LAW OFFICES OF**
**HERBERT G. FEUERHAKE**

**HERBERT G. FEUERHAKE, ESQUIRE**
DE State Bar I.D. No.: 2590
521 West St
Wilmington, DE 19801
(302) 658-6101
herblaw@verizonmail.com
*Attorney for Plaintiff*

DATED:       January 23, 2008