## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY TAYLOR, | ) | C. A. No. 04-1391 JJF |
| et. al., | ) | |
| | ) | |
| Defendants/Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CORRECTIONAL MEDICAL DELAWARE, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

### REPLY BRIEF IN SUPPORT OF
### STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

STEPHANI J. BALLARD, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

DATED: March 12, 2008             Attorney for State Defendants

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ........................................................................................................ ii

ARGUMENT .........................................................................................................................1

I. SUMMARY JUDGMENT MUST BE GRANTED IN FAVOR OF STATE DEFENDANTS AS TO REMAINING COUNTS I, II, AND III, AS PLAINTIFF HAS ADDUCED NO EVIDENCE WHATSOEVER IN THE RECORD TO SUPPORT HIS ALLEGATIONS OF EIGHTH AMENDMENT OR FIRST AMENDMENT VIOLATIONS ON THE PART OF ANY STATE DEFENDANT.........................................................................................1

A. Plaintiff fails to show the personal involvement of any State Defendant in any constitutional violation in connection with the assault of Plaintiff by another inmate..1

1. The undisputed facts surrounding Defendant Lt. Salas' actions on July 10, 2004 clearly do not provide any basis upon which a reasonable fact finder could find that Lt. Salas exhibited deliberate indifference to Plaintiff's Eighth Amendment rights2

2. Lt. Paul Harvey is not a defendant in this case, and Plaintiff's arguments as to his potential liability are not properly considered upon the summary judgment motion of the actual, and only, State Defendants ....................................................5

B. Plaintiff fails to cite *any* evidence suggesting a genuine issue of fact as to the claims in Count III that supervisory State Defendants are subject to liability on "failure to train" or "maintenance of wrongful practices and policies" theories in connection with the inmate on inmate assault.........................................................................................7

C. Plaintiff appears to have abandoned his claims in Count I of the Complaint that any named State Defendant personally exhibited deliberate indifference to a serious medical need of Plaintiff. Such a claim must be based on the named defendant being in custodial control of the inmate, and having personal involvement in the denial of medical care. There is no evidence in the record that any named Defendant met any of these criteria nor, indeed, that Plaintiff was denied adequate medical care at all .............................10

D. Plaintiff's Count II "First Amendment" claim fails as a matter of law as there is no evidence that Plaintiff suffered any adverse action from any named Defendant as a result of his purported First Amendment activity ................................................................11

CONCLUSION ....................................................................................................................13

# TABLE OF CITATIONS

**Case Name**                                                                                                     **Page**

Bequeath v. L.B. Foster Co., 367 F.Supp.2d 779 (W.D. Pa. 2005) ...............................................11

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............................................................................1

Hamilton v. Leavy, 117 F.3d 742 (3d Cir. 1997)..........................................................................2, 4

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) ......................................................................8

Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990) ................................................................11

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) .....................13

Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) ...................9

Rauser v. Horn, 241 F.3d 300 (3d Cir. 2001) ...............................................................................12

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) ......................................................................2

Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989) ............................................................................8

Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005)...................................................10

**Statutes, Rules and Other Authorities**

United States Constitution, First Amendment ..............................................................1, 11, 12, 13

United States Constitution, Eighth Amendment ......................................................................1, 13

United States Constitution, Eleventh Amendment .........................................................................9

42 U.S.C. §1983................................................................................................................. *passim*

Federal Rule of Civil Procedure 15(c) ............................................................................................6

Federal Rule of Civil Procedure 56(c) .......................................................................................1, 13

Federal Rule of Civil Procedure 56(e) ............................................................................................1

Federal Rule of Evidence 702..........................................................................................................8

**ARGUMENT**

I. **SUMMARY JUDGMENT MUST BE GRANTED IN FAVOR OF STATE DEFENDANTS AS TO REMAINING COUNTS I, II, AND III, AS PLAINTIFF HAS ADDUCED NO EVIDENCE WHATSOEVER IN THE RECORD TO SUPPORT HIS ALLEGATIONS OF EIGHTH AMENDMENT OR FIRST AMENDMENT VIOLATIONS ON THE PART OF ANY STATE DEFENDANT.**

Defendants' Motion for Summary Judgment is governed by Federal Rule of Civil Procedure 56(c), which provides that the moving party is entitled to summary judgment and judgment shall be entered forthwith, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (moving party's burden met by showing absence of evidence necessary to support Plaintiff's case). State Defendants made this showing in their Opening Brief in this matter. In response to a motion for summary judgment, the burden shifts to the non-moving party (Plaintiff here), who "*must set forth specific fact*s that indicate [there is] a genuine material issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). Plaintiff has failed to adduce any actual evidence in the record which would support his allegations.

    A. **Plaintiff fails to show the personal involvement of any State Defendant in any constitutional violation in connection with the assault of Plaintiff by another inmate.**

As discussed in the Opening Brief, Plaintiff's Complaint did not actually plead, but discovery proceeded upon, a theory of "failure to protect" in violation of the Eighth Amendment, in connection with the assault on Plaintiff by inmate Robert Johnson. As with all §1983 claims, it is well-settled that no defendant will be held liable for civil rights violations without, *inter alia*, personal involvement on the part of the individual defendant in the alleged constitutional tort. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). In short, the named defendants must act with a

1

personally culpable state of mind evidencing deliberate indifference toward the safety of the plaintiff. See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).

Plaintiff attempts to blur the clear requirement of personal involvement by arguing in his brief that unnamed "DOC Personnel" acted with deliberate indifference to Plaintiff's safety on the day in question. (Ans. Brf., D.I. 98 at p. 14). What is entirely absent from Plaintiff's Answering Brief is any evidence that Defendants Taylor, Howard, Carroll or Davis-Barton had any personal involvement with any of the events (let alone committed any alleged violations) involving Plaintiff on July 10, 2004. Defendant Lt. Salas, is discussed separately at §A(1), below and, as to him also, the record contains no evidence of deliberate indifference. Thus, summary judgment must be granted to Defendants Taylor, Howard, Carroll and Davis-Barton on the "failure to protect" claims.

> **1. The undisputed facts surrounding Defendant Lt. Salas' actions on July 10, 2004 clearly do not provide any basis upon which a reasonable fact finder could find that Lt. Salas exhibited deliberate indifference to Plaintiff's Eighth Amendment rights.**

It is undisputed that Defendant Correctional Lt. John Salas was on duty as a supervisor of the area in the prison where the assault took place on July 10, 2004. Thus, one must look to the factual record for, and Plaintiff must clearly identify in the factual record, evidence by which a fact finder could find that Lt. Salas was aware of and deliberately indifferent to a risk of serious harm to Plaintiff on that day. It is well-settled that simply serving as a supervisor of others not a basis for personal liability under § 1983. Rode, *supra*, 845 F.2d at 1207-08.

The analysis is simple in this case, as Plaintiff agrees to virtually all of the facts pertaining to Lt. Salas which were presented by Defendants in their Opening Brief. Plaintiff agrees that Lt. Salas was an area lieutenant of an area which included the T-buildings and that a non-defendant (former CO Keith Lovett) was the person actually responsible for supervising the T-yard and the T inmates

when they were in the yard. (Ans. Brf. at 6-7). Plaintiff agrees that only Lovett—not Salas, who was in another area--witnessed Robert Johnson's abusive behavior (towards Lovett) in the chow hall earlier that day, and also that Lovett did not inform Salas that he considered Johnson to be a threat to himself or anybody. (Ans. Brf. at 8, 10; *see also* A-58-59; 63, 65). Plaintiff offers no evidence to contradict Salas' testimony that he was not acquainted with Robert Johnson or aware of any problems with this inmate prior to July 10, 2004. (A-61, 63).

Plaintiff attempts to distort a statement made by Lt. Salas in his deposition in an attempt to support his claim. Salas was questioned about his personal opinions as to the workloads and staffing responsibilities of CO's at the prison. In a question objected to by State's counsel, Lovett responded that "[in] my personal belief" the responsibilities of Unit 28 (the Lovett position) were too much for one person." (A-55). Later in his deposition, Salas again reiterated that this was only his personal opinion. (A-61). Plaintiff distorts Salas' testimony by saying that Salas "communicated" concerns about the Unit 28 position to his superiors. (Ans. Brf. at 8). What Salas actually testified to was that "maybe in passing" he made a similar statement to someone of higher rank and that it was "not a specific concern" to him at the time. (A-55-56; A-65).

Plaintiff vainly attempts to premise liability on Salas by pointing out that Salas had been informed that an unidentified T inmate had acted out during chow prior to the time Ward was assaulted in the yard by Johnson. By all accounts this information was conveyed a very short time before the actual assault. The flaw in Plaintiff's argument is that Salas' awareness that an unknown inmate had acted out verbally toward a correctional officer at chow does not, by any means, equate to knowledge that that inmate posed a risk of assaulting Timothy Ward, particularly when the inmate in

3

question had been seen and cleared to return to his housing unit by the infirmary[1]. Further, Salas testified that the (still unknown) inmate who was pointed out to him was headed toward the shower during the brief and only moment when Salas saw him, and not toward the yard. (A-66). Plaintiff cites testimony in his brief which misleadingly suggests that Lovett identified the particular inmate to Salas; this is not true. (Ans. Brf. p. 25). The first piece of testimony about being shown who the "chow inmate" was (A-65; Salas Depo., p. 66) refers to a conversation Salas had with another T-building guard *when Salas was making his own independent inquiry into the "chow inmate"* after the brief disclosure by Lovett, who conveyed no urgency about the matter. (A-65). "Lovett didn't mention his concern or severity of concern to me concerning the inmate." (A-65, p. 67). Finally, Plaintiff cites testimony where Salas speculated as to how the inmate might have entered the yard (which was permissible, since this was yard time), but the record is clear that Salas did not let the inmate out into the yard, nor did he actually know how Johnson actually gained access to the yard. (A-65-66).

From the undisputed factual record it is clear that Salas never had any awareness of a risk that Robert Johnson posed to Plaintiff, let alone exhibited a deliberate indifference to Plaintiff being subject to that unknown and unknowable risk. As discussed in the opening brief, the facts of this case as to Lt. Salas stand in stark contrast to the facts in Hamilton, *supra*, where there was ample evidence that the named defendants were personally aware of a long history of threats and assaults against the "snitch" inmate, and knowingly chose to place him in the general population where he

---

1 Plaintiff also tries to make much of the fact that Salas (or any CO) had authority to send Johnson back to the infirmary if he was "creating another commotion." (Ans. Brf. at 24; A-63). However, there is no evidence in the record that Johnson created a "commotion" or engaged in any problematic behavior between chow hall and the assault on Ward. Correctional Officers do not have authority to "second guess" or countermand the medical provider's decision to clear or discharge an inmate, unless there is a further incident. (A-63; A-38).

4

had been assaulted before. By contrast, Lt. Salas had no reason to know that Robert Johnson (the "chow inmate") was a threat to Plaintiff or to other inmates. Lt. Salas, upon learning (without specifics) that the "chow inmate" had acted up, was still in the process of making inquiries about this event—on his own initiative--when the attack occurred. Lt. Salas knew the chow inmate had been seen and released by Medical. Lt. Salas did not place the "chow inmate" (Johnson) in the yard with Plaintiff, nor even know that he (Johnson) was in the yard.

Plaintiff misapprehends the legal standard which he must meet to prove his case, by arguing that it was "reasonably foreseeable"[2] that an attack on Plaintiff by Johnson might occur. (Ans. Brf. at p. 27). The standard for §1983 liability is *deliberate indifference* by the defendant to a known serious risk to the plaintiff. To the questionable extent that Lt. Salas could foresee that Johnson posed any "risk" at all after he returned from the infirmary, no reasonable juror could find from the evidence in the record that Salas acted with the type of culpable mindset which would constitute "deliberate indifference" to Ward or to the safety of inmates in general. Accordingly, Defendant Lt. Salas is entitled to summary judgment on the "failure to protect" claim.

> **2. Lt. Paul Harvey is not a defendant in this case, and Plaintiff's arguments as to his potential liability are not properly considered upon the summary judgment motion of the actual, and only, State Defendants.**

Throughout the Answering Brief, Plaintiff makes arguments as to the alleged liability of "Proposed Defendant" Lt. Paul Harvey. (Ans. Brf. at 1, 9, 28-32). The simple and dispositive response to these arguments is that Lt. Harvey is not and never has been a Defendant in this case. His liability, or lack thereof, has absolutely no bearing on the pending motion which is filed by the existing, and only, State Defendants: Taylor, Howard, Carroll, Davis-Barton and Salas.

By way of background for the Court, the scheduling order in this case provided a deadline to

5

amend the pleadings of no later than October 1, 2006. (D.I. 39). No amendments to the Complaint were timely filed. Plaintiff filed a motion to amend to add Lt. Harvey as a defendant on December 7, 2007, a full three years after the Complaint was filed; more than one year after the expiration of the statute of limitations; more than one year after the deadline to amend, and a mere one (business) day before Defendants' Summary Judgment motion and Opening Brief were filed. Plaintiff's Motion to Amend (D.I. 87), was based solely on statements made at deposition by non-party Keith Lovett about his alleged interactions with Lt. Harvey on the date of the assault. Plaintiff did not attach a proposed amended complaint, nor indicate what allegations Plaintiff would assert against Lt. Harvey. State Defendants filed a Response opposing Plaintiff's motion to amend, arguing that amendment would be futile due to the expiration of the statute of limitations, and the inability of Plaintiff to demonstrate that his claims should "relate back" pursuant to F.R.C.P. 15(c). *See* D.I. 93.

Plaintiff falsely contends that he could not have been aware of Lt. Harvey as a potential player in this case until August 2007 (which is still a full four months before he sought to amend). (Ans. Brf. at 1-2). The reality is that Plaintiff knew or should have known of the nature of Harvey's alleged involvement, per Lovett[3], at least as early as *February 27, 2007.* On that date, State Defendants filed a document production in response to discovery requests, which included a personal email authored by Keith Lovett, detailing his alleged interactions with Harvey that day, in the same manner as his deposition testimony and with even more (alleged) detail. (D.I. 90, A-45-46; see also (D.I. 91, A-172, specifically identifying email as of 2/27/07). Lt. Harvey's name was also noted in an incident report produced with State Defendants' Initial Disclosures as early as September, 2006 (albeit not with regard to conversations with Lovett). (D.I. 91, A-142; D.I. 92, A-257). Thus (the

---

2 Defendants dispute that even this standard is met.
3 Defendants do not concede the veracity of any particular testimony or statements by Keith Lovett.

futility/limitations bar to amendment aside), Plaintiff's conduct in waiting anywhere from 10 to15 months to move to add this known witness as a defendant, or to take further discovery, cannot be characterized as other than dilatory.

As noted in the Opening Brief, even if Lt. Harvey's conduct were to be considered, *arguendo*, for purposes of this motion, Lt. Harvey (as a hypothetical defendant) would be entitled to summary judgment even on the "facts" (Keith Lovett's testimony about Harvey) as alleged by Plaintiff.  No reasonable fact finder could find that Harvey acted with "deliberate indifference" toward Plaintiff, when it is undisputed that *Harvey* was the person who arranged to have Robert Johnson evaluated by the infirmary, in light of the behavior in chow hall that had been reported by Lovett.  Far from exhibiting deliberate indifference, Lt. Harvey took prompt remedial action corresponding to the problem reported.  In any event, Lt. Harvey is not a party to these proceedings; he has not had an opportunity to be heard or to defend himself, and Plaintiff's allegations and arguments about this non-defendant's alleged misconduct in this matter are simply immaterial to the pending summary judgment motion before this Court.

> **B. Plaintiff fails to cite *any* evidence suggesting a genuine issue of fact as to the claims in Count III that supervisory State Defendants are subject to liability on "failure to train" or "maintenance of wrongful practices and policies" theories in connection with the inmate on inmate assault.**

State Defendants moved for summary judgment on Plaintiff's "wrongful policies and practices" claim, noting that Plaintiff had adduced no evidence whatsoever during discovery which would support a claim that any DOC training, policy or practice was constitutionally deficient in any way.  In his Answering Brief, Plaintiff has not responded with any evidence of record (only unsupported arguments of counsel) which would create a genuine issue of fact on this claim, and thereby avoid summary judgment.  Plaintiff fails to meet his burden of proof on each and every

7

element of his burden on such a claim. *See* Opening Brief at pp. 28-31; Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989).

First and foremost, Plaintiff did not identify specific training (or policies) which defendants failed to employ that could reasonably be expected to prevent the harm that occurred. Id. As discussed in the opening brief, the questions surrounding the policies or training required to handle potentially mentally ill inmates are not issues within the purview of the untrained juror. They are questions which could only be answered with the assistance of testimony from a witness with experience and expertise in these specialized psychiatric and penological areas. *See* Federal Rule of Evidence 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148-49 (1999).

Also fatal to Plaintiff's claims is the fact that there is no evidence in the record as to DOC/DCC's training procedures or policies/practices as to any of the extremely broad areas under which this claim is brought. Simply put, there is no evidence at all addressing any of DCC's training practices or policies, and certainly no evidence suggesting that any particular training, policy or practice was deficient. Further, Plaintiff never established an evidentiary link between the supervisory State Defendants, Taylor, Howard and Carroll and any DOC training and policies that were in effect at the relevant time. Plaintiff did not depose any of the named Defendants (other than Salas) in discovery. There is nothing in the record showing that Taylor, Howard or Carroll were the actual policymakers; that they were on notice of other policies or training which would have avoided the assault, nor any evidence remotely suggesting that these supervisory Defendants exhibited a "deliberate indifference" to the rights of inmates.

In this case, because Plaintiff never identified any expert witnesses, he could not possibly meet his burden of proving deliberate indifference to a constitutionally deficient prison policy or training, on the part of Defendants. In the Answering Brief, plaintiff's counsel makes bare assertions

that the "culprit" in this case was the "chronic understaffing of Delaware's prisons." (Ans. Brf. at 33). Plaintiff essentially offers his own opinion that a "constellation of factors at play on July 10, 2004" created a "time bomb" which led to Plaintiff's injury. Id. (*See also* Ans. Brf. at pp. 35-36, wherein Plaintiff sets forth his own opinions of the alleged shortcomings of DOC and how the events of July 10, 2004 were handled). Of course, this is mere argument, and does not advance the question before this Court of whether Plaintiff has adduced *actual evidence* in the record to sufficient to go forward with his claim. He has not.

Plaintiff's Answering Brief also entirely fails to respond to a key legal argument raised by State Defendants in the Opening Brief, on the "policy/failure to train" claims. This argument, which will not be reiterated in detail here, is that such "policy/practice" claims are theories of municipal liability only, and would be legally barred against State supervisory Defendants Taylor, Howard and Carroll, by virtue of these *State* Defendants' Eleventh Amendment immunity. This principle is clear based upon the language used by the United States Supreme Court in Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). In that case, the Court held that "Congress did intend *municipalities and other local government units* to be included among those persons to whom §1983 applies." 436 U.S. at 689 (emphasis added). The Court further noted that "there [is no] basis for concluding that the Eleventh Amendment is a bar to municipal liability. . . . Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." Id. To counsel's knowledge, the United States Supreme Court has never considered a policy/practice/training §1983 claim that involved a State defendant. *See* Op. Brf. at pp. 31-33 for further discussion of this issue.

9

**C. Plaintiff appears to have abandoned his claims in Count I of the Complaint that any named State Defendant personally exhibited deliberate indifference to a serious medical need of Plaintiff. Such a claim must be based on the named defendant being in custodial control of the inmate, and having personal involvement in the denial of medical care. There is no evidence in the record that any named Defendant met any of these criteria nor, indeed, that Plaintiff was denied adequate medical care at all.**

For any individual State Defendant to be liable under Count I, there would have to be evidence that *he or she personally* knew of and disregarded Mr. Ward's serious medical needs following the assault of July 10, 2004. The Third Circuit has held that, to meet this standard, plaintiff must prove that *the custodial officers* must have or should have known of the inmate's particular medical needs and acted with reckless indifference to the known risk. See Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (2005).

In the Opening Brief, State Defendants demonstrated that there was no evidence that Defendants Stanley Taylor, the Commissioner of DOC; Paul Howard, the Bureau Chief; Thomas Carroll, the Warden of the entire DCC institution, and John Salas, the correctional officer whose sole involvement was supervising the T area on the date of the assault, had any personal involvement in Timothy Ward's ongoing medical care in prison following the assault. In short, they were not, in any sense of the word, "custodial officers" with respect to Plaintiff's medical care. State Defendants addressed Defendant Jessica Davis-Barton separately in the Opening Brief, as she played a different role in her capacity as a correctional counselor. In her role of counselor, Ms. Barton corresponded with Plaintiff's family about aspects of his medical care, but she was not a "custodial officer," nor did not (or could she) provide any medical treatment herself, as she was not a medical professional. (A-004). Defendants demonstrated that there was no evidence in the record which could support a finding of "deliberate indifference" to Timothy Ward's serious medical needs on the part of Ms. Barton.

10

In his Answering Brief, Plaintiff devotes a scant two pages to the entire "medical care" argument, most of which is a summary of allegations made by Plaintiff in his own affidavit, dated January 17, 2008. A non-moving party may not successfully oppose a summary judgment motion, by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. Bequeath v. L.B. Foster Co., 367 F.Supp.2d 779, 784 (W.D. Pa. 2005), *citing* Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Nowhere in his argument (or even in the affidavit) does Plaintiff point to a single piece of actual evidence that any named defendant, including Ms. Davis-Barton, participated in the alleged medical deprivations. Thus, all State Defendants are entitled to summary judgment as to the Count I medical care claims.

**D. Plaintiff's Count II "First Amendment" claim fails as a matter of law as there is no evidence that Plaintiff suffered any adverse action from any named Defendant as a result of his purported First Amendment activity.**

As with the medical care claim, Plaintiff devotes only approximately one page of the Answering Brief in opposition to Defendants' Motion for Summary Judgment as to the "First Amendment" violations alleged in Count II of the Complaint. While Plaintiff states that the "actions of the DOC Defendants" violated Plaintiff's Constitutional right to freedom of speech, the brief is devoid of any mention, let alone record evidence, as to what "action" any named defendant took against Timothy Ward which might have violated his free speech rights. As with any §1983 claim, personal involvement of the named defendant is the *sine qua non* of the ability to maintain or prove the claim.

Assuming *arguendo*, that Plaintiff's filing of this lawsuit to redress personal grievances constituted protected First Amendment activity,[4] Plaintiff cannot make out a prima facie case for

---

4 There is no evidence in the record that Plaintiff made "contact with the newspapers." (Ans. Brf. at 38). Plaintiff's attorney may have made media contact in order to promote the lawsuit, but Plaintiff

11

violation of his first amendment rights as he cannot demonstrate that he suffered any adverse action at the hands of one of the named State Defendants. Rauser v. Horn, 241 F.3d 300, 333 (3d Cir. 2001). Plaintiff also has the burden of establishing a causal connection between the protected activity and the adverse action. Id. In the burden shifting analysis, a defendant may defeat the plaintiff's claims by showing that the same actions would have been taken even absent the protected conduct. Id at 333-34.

       In this case, each State Defendant is entitled to summary judgment on the First Amendment claims, as Plaintiff has provided no evidence of any adverse action that was taken against him by any of the named Defendants. Accordingly, the State Defendants are entitled to summary judgment on this claim also.

---

cannot vicariously assert First Amendment rights through the action of others. In any event, this issue is moot, as no adverse action took place.

**CONCLUSION**

To defeat a motion for summary judgment, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Similarly, Plaintiff may not avoid summary judgment by simply restating the bare claims of the Complaint in affidavit form.  For the foregoing reasons and the reasons articulated in the Opening Brief, there are no genuine issues of material fact and no bases upon which a reasonable fact-finder could find in Plaintiffs' favor on their Eighth Amendment or First Amendment claims. State Defendants are therefore entitled to judgment as a matter of law.

State Defendants respectfully request this Honorable Court grant Summary Judgment in their favor as to all claims against them, pursuant to Rule 56(c).

        **DEPARTMENT OF JUSTICE**
        **STATE OF DELAWARE**

        By: /s/ Stephani J. Ballard
        STEPHANI J. BALLARD (I.D. No. 3481)
        Deputy Attorney General
        Carvel State Office Building
        820 North French Street, 6th Floor
        Wilmington, DE 19801
        (302) 577-8400
DATED:  March 12, 2008        Attorney for State Defendants

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY WARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **STANLEY TAYLOR,** ) | C. A. No. 04-1391 JJF |
| **et. al.,** ) | |
| ) | |
| **Defendants/Third Party** ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| **FIRST CORRECTIONAL MEDICAL** ) | |
| **DELAWARE, LLC,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on <u>March 12, 2008</u>, she caused the attached, *Reply Brief in Support of State Defendants' Motion for Summary Judgment*, to be electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Jeffrey K. Martin, Esquire  
Martin & Wilson, P.A.  
1508 Pennsylvania Ave., Suite 1C  
Wilmington, DE 19806

Herbert G. Feuerhake, Esquire  
521 West Street  
Wilmington, DE 19801

/s/ Stephani J. Ballard  
Stephani J. Ballard, I.D. #3481  
Deputy Attorney General  
Carvel State Office Building  
820 N. French Street, 6th Floor  
Wilmington, DE 19801  
(302)577-8400  
Attorney for State Defendants