IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY WARD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 04-1391 JJF |
| | : | |
| STANLEY TAYLOR, et al., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants, | : | |
| | : | |
| FIRST CORRECTIONAL MEDICAL | : | |
| DELAWARE, LLC, | : | |
| | : | |
| Third-Party | : | |
| Defendant. | : | |

Jeffrey K. Martin, Esquire of MARTIN & WILSON, P.A., Wilminton, DE.
Herbert G. Feuerhake, Esquire of LAW OFFICE OF HERBERT FEUERHAKE, Wilmington, DE.

Counsel for Plaintiff.

Stephani J. Ballard, Deputy Attorney General Esquire of the DEPARTMENT OF JUSTICE FOR THE STATE OF DELAWARE, Wilmington, Delaware.

Counsel for Defendants.

**OPINION**

July 29, 2008

Farnan, District Judge

Pending before the Court is Defendants' Motion for Summary Judgment (D.I. 88).   For the reasons discussed, the Court will grant Defendants' motion.

## I.    Background

On October 26, 2004, Plaintiff Timothy Ward filed the present action pursuant to 42 U.S.C. § 1983 against the State of Delaware Department of Correction ("DOC"), numerous individual DOC administrators and employees, and "certain unknown individual employees" of the DOC (collectively, "Defendants"), alleging numerous constitutional violations.  (D.I. 1.)  Plaintiff's claims arise out of an July 10, 2004 incident in which he, an inmate at the Delaware Correctional Center ("DCC") in Smyrna, Delaware,[1] was assaulted from behind, without warning or provocation, and severely beaten by inmate Robert Johnson ("Johnson").  (Id.)

### A.    Procedural Background

On March 30, 2006, the Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing Plaintiff's conspiracy and substantive due process claims, any claims against the DOC, and any claims against individual Defendants in their official capacities.  (D.I. 26.)  Plaintiff's Eighth Amendment

---

[1]Mr. Ward was released from state custody on January 3, 2007.

1

claims for failure to protect, wrongful policies and procedures, and inadequate medical care, as well as his First Amendment claim for retaliation, remain. On May 19, 2008, the Court granted Plaintiff's Motion for Leave to Amend the Complaint to add Lieutenant Paul Harvey as a Defendant. (D.I. 103.)

**B.   Factual Background**[2]

On July 10, 2004, Mr. Ward was sitting on a picnic table in a recreation yard at the DCC when he was assaulted from behind, without warning, by inmate Johnson. Other inmates reported to Mr. Ward that, after knocking him to the ground, Johnson straddled Ward and repeatedly punched and kicked him in the face and head. (D.I. 98, B1-B2.)

Earlier during the day on July 10, 2004, Johnson had been verbally abusive towards Correctional Officer Lovett ("C.O. Lovett") in the chow hall, making sexually obscene comments towards and threatening to rape Lovett. (D.I. 92, A27; hereinafter "Lovett dep. at __".) Immediately after lunch in the chow hall, C.O. Lovett approached his superior officer, Lieutenant Harvey, to express his concern about Johnson, telling Lt. Harvey:

> "This guy's got some problems. This dude's got some major f***ing problems. He's going to bust loose. Something is

---

[2]The following background information is taken from the parties' submissions and does not constitute findings of fact. It is cast in the light most favorable to the non-movant. <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976).

going to go down." ... I said, "You better do something."

(Lovett dep. at 66.)  Lovett further testified at deposition:

> I was more alarmed at the fact that Robert Johnson was kind of glassy eyed and he kind of was real shitty looking when the incident had taken place in the chow hall.

(Id. at 68.)  At that time, Lt. Harvey had Johnson escorted to the infirmary by C.O. Dunn,[3] where he was seen by a nurse who questioned and released him.  (D.I. 92 at A254.)  The nurse issued a referral to have Johnson seen by mental health staff on the following Monday, July 12th.  (Id.)  C.O. Lovett spoke with C.O. Dunn and possibly Lt. Harvey after Johnson returned from the infirmary, and learned that there was no mental health staff on duty.  (Lovett dep. at 122-123.)[4]

C.O. Lovett testified at deposition that, Lt. Harvey "kind of blew of it off," referring to the concerns about Johnson that Lovett had just relayed to him.  (Lovett dep. at 68.) Continuing, Lovett testified, "I kind of felt like sometimes people don't want to do things, don't want to aggressively deal

---

[3]C.O. Lovett testified that he "assumed that Harvey had Johnson taken to the infirmary."  (Lovett dep. at 99.)

[4]Lovett testified:

A: I wouldn't have talked to Harvey.  I wouldn't be comfortable talking to Harvey.  You know, he wasn't a real open type of person."
Q: I understand.  But in this e-mail it says that you did talk to Harvey after Johnson returned.
A: I probably talked to Harvey and talked to Dunn as well.

(Lovett dep. at 123.)

with situations as they happen in form of paperwork, removing an inmate or whatever." (Id.) Lovett also thought that a five or ten minute evaluation of Johnson by the infirmary was inadequate, and that Johnson "needed more type [sic] of attention." (Lovett dep. at 100.)

Though not mentioned in his deposition testimony, C.O. Lovett stated in an email dated September 3, 2004, that Lt. Harvey had told him after the chow incident on July 10, 2004, that Harvey "was familiar" with Johnson, that Johnson "was the guy who jumped out the window in W building," and that Harvey had been "assaulted by the same inmate [Johnson] in the infirmary." (D.I. 90 at A45.)

Lieutenant Salas was the Area Commander at the time when Johnson acted out during chow, but he was unaware of Johnson's behavior towards C.O. Lovett until after Johnson had been sent to the infirmary. (D.I. 90 at A59, hereinafter "Salas dep. at __".) Shortly thereafter, Lt. Salas spoke with C.O. Lovett, who told Salas that Johnson had acted out during chow, but "didn't mention his concern or severity of concern." (Salas dep. at 67.) Lt. Salas had also heard in passing that there had been an incident in one of the chow halls, and had had Johnson pointed out to him when Johnson was returning from the infirmary, approximately ten to fifteen minutes before the incident with Mr. Ward. (Salas dep. at 66-69.) At that time, it appeared to Salas that Johnson

4

was going to the showers.  (Id.)  Lt. Salas had not been aware
that Johnson was the inmate who had jumped out of a window in the
W building.  (Id.)  Though he did not know how Johnson actually
entered the recreation area, Lt. Salas testified that Johnson
could have requested to go out or could have walked through an
unsecured door.  (Salas dep. at 69-70.)

As "Unit 28," C.O. Lovett was tasked with supervisory
responsibilities for the inmates in the recreation yard on July
10, 2004.  (Salas dep. at 25.)  At the time of the incident in
which Johnson attacked Mr. Ward, C.O. Lovett was in one of
buildings adjacent to the recreation yard doing an "area check."
(Lovett dep. at 40.)  Lt. Salas testified that Lovett should not
have been doing an area check at the time of incident (Salas dep.
at 49), but also that the duties of Unit 28 were "too great a
responsibility" for one person, and that "the whole state knows
that we're understaffed" (Salas dep. at 30).

As a result of the July 10th attack, Mr. Ward sustained
numerous injuries, including a dislocated jaw, broken nose,
damage to his right eye, a shattered eye socket, facial
fractures, and facial lacerations.  (D.I. 98 at B2.)  Mr. Ward
was transported to Kent General Hospital following the assault
and released the same day, at which point he returned to the
infirmary at the DCC.  (D.I. 92 at A261-75.)  Mr. Ward was
admitted to the DCC infirmary from July 10 to July 20, 2004, and

5

from September 2 to September 10, 2004.  (D.I. 92 at A-286, A-302.)

By his affidavit dated January 17, 2008, Mr. Ward asserted that according to various medical providers, "I need to have surgery on my tripod fracture, the septum in my nose, my jaw dislocation and various dental surgery to repair and replace the damage to my teeth."  (D.I. 98 at B3.)  Mr. Ward further asserted that "[w]hile incarcerated, I filed countless medical call slips and grievances with regard to the medical care that I sought and was denied," and that "there were numerous times where I was denied pain medication."  (Id.)

On September 17, 2004, Mr. Ward was placed in "Protective Custody" following an altercation with another inmate in which both inmates' televisions were knocked to the floor.  (D.I. 92 at A336-37.)  Mr. Ward testifies that he believes he was sent to "isolation" in September of 2004 because of the publicity of his case.  (D.I. 98 at B4.)

## II. Legal Standard

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party.

A court should not make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prods.,Inc., 530 U.S. 133, 150 (2000).  To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 151 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted).  The mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted.

7

_Id_.

### III. Discussion

#### A.  Failure to Protect

Plaintiff contends that Defendants Salas and Harvey violated his Eighth Amendment rights by failing to protect him from Johnson's assault.

The Eighth Amendment prohibition against cruel and unusual punishment has been interpreted to impose a duty upon prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." _Farmer v. Brennan_, 511 U.S. 825, 833 (1994)(internal quotes and citations omitted). To prevail on an Eighth Amendment failure-to-protect claim, a prisoner must demonstrate two requirements: first, that he is "incarcerated under conditions posing a substantial risk of serious harm;" and second, that the prison official has a "sufficiently culpable state of mind." _Id._, at 834 (internal quotes and citations omitted).  To satisfy the second prong in this subjective approach to deliberate indifference, the prisoner must establish that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." _Id._, at 837.

A prison official's knowledge of a substantial risk is a

8

question of fact, which can be proven by circumstantial evidence.

Farmer, 511 at 837. By way of example, in the context of inmate

attacks by other inmates, the Farmer court explained the type of

circumstantial evidence needed for a finding of actual knowledge

on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents evidence showing
> that a substantial risk of inmate attacks was 'longstanding,
> pervasive, well-documented, or expressly noted by prison
> officials in the past and the circumstances suggest that the
> defendant-official being sued had been exposed to
> information concerning the risk and thus 'must have known
> about it, then such evidence could be sufficient to permit a
> trier of fact to find that the defendant official had actual
> knowledge of the risk.'

Farmer, 511 U.S. at 842-843 (citations omitted).

Beyond knowledge of an excessive risk, an official must also

"disregard" that danger. Id. at 837. In elaborating on the

meaning of "disregard" in this context, the Farmer court noted

that "prison officials who actually knew of a substantial risk to

inmate health or safety may be found free from liability if they

responded reasonably to the risk, even if the harm ultimately was

not averted." Farmer, 511 U.S. at 844. The Third Circuit's

ruling in Hamilton v. Leavy, 117 F.3d 742 (3d Cir. 1997), is also

instructive on this point. In Hamilton, the plaintiff, an inmate

who had been be labeled a "snitch," was severely assaulted after

the unanimous recommendation of a Multi-Disciplinary Team ("MDT

Defendants") that the plaintiff be placed in protective custody

had been rejected. Hamilton, 117 F.3d at 745. The Hamilton

9

court stated that while it appears that the MDT defendants acted
reasonably in recommending that Hamilton be placed in protective
custody, the "reasonableness of their actions following the
rejection of that recommendation remains a question," and the
district court erred by not considering "whether the MDT
defendants could have taken further action," such as placing
plaintiff in administrative segregation.  Id., at 748.

### (i)   Defendant Lt. Salas

By their motion, Defendants contend that Lt. Salas neither
had any awareness of a risk that Johnson posed to Mr. Ward nor
exhibited deliberate indifference to Mr. Ward with respect to
such a risk.  Defendants contend that a jury could not reasonably
find Lt. Salas to have had a culpable mindset where Lt. Salas (1)
had been told only that Johnson "act[ed] out" during chow, (2)
had no personal knowledge of Johnson's behavior or history, and
(3) and knew that Johnson had been seen and released from the
infirmary.

In response, Mr. Ward contends that a jury could reasonably
find that Lt. Salas had a sufficiently culpable mindset based on
(1) Salas's personal view that the recreation yard duties were
too much for one correctional officer, (2) his knowledge that
Johnson had acted out in chow hall, had been sent to the
infirmary, and had been released from the infirmary, and (3) his
knowledge that Johnson may have entered the recreation yard

10

through an unsecured door.

After reviewing the parties' contentions and the evidence, the Court concludes that the circumstantial evidence Mr. Ward proffers fails to raise a reasonable inference that Lt. Salas knew of an excessive risk to Mr. Ward's safety. Lt. Salas was told by C.O. Lovett that Johnson had "either scream[ed] or [said] stuff to him" at chow, and had Johnson pointed out to him after Johnson returned from the infirmary. Even when coupled with Lt. Salas's opinion that the duties of the recreation yard officer were too much for one person to fulfill, the Court concludes that these facts do not reasonably permit the inference that Lt. Salas knew off an excessive risk to Mr. Ward's safety. See Farmer, 511 U.S. at 842-43; see also Beers-Capitol v. Whetzel, 256 F.3d 120, 141-42 (3d Cir. 2001)(finding sufficient evidence to raise a genuine issue of fact on whether a residential counselor knew of the excessive risk a male counselor posed to female youth residents where (1) the defendant had heard general rumors of the sexual abuse, and made file notes of those rumors "to cover my behind, in case it were true," but did not report them to her supervisors, and (2) a resident testified that the defendant admitted to her that "she kind of knew that [the male counselor] was messing with students.")

Absent evidence allowing the inference that Lt. Salas had actual knowledge of an excessive risk of harm to Mr. Ward, Mr.

11

Ward's failure to protect claim against Lt. Salas is not supported by the existing record of circumstantial evidence. Accordingly, the Court will grant Defendants' motion with respect to Mr. Ward's failure to protect claim against Lt. Salas.

(ii) <u>Defendant Lt. Harvey</u>

By their motion, Defendants contend that Lt. Harvey is entitled to summary judgment because no reasonable fact finder could find that Lt. Harvey acted with deliberate indifference toward Mr. Ward. Specifically, Defendants contend that Lt. Harvey took prompt and appropriate remedial action by sending Johnson to the infirmary after learning of his erratic behavior during chow.

In response, Mr. Ward contends that, in light of Lt. Harvey's awareness of Johnson's agitated state, C.O. Lovett's concern, and the fact that Johnson had not been evaluated by a mental health specialist in the infirmary, Lt. Harvey's failure to provide for appropriate surveillance of Johnson when he returned to the general population raises genuine issues of material fact concerning the claim of deliberate indifference. Further, Mr. Ward contends that the disputed reasonableness of Lt. Harvey's conduct after Johnson was returned from the infirmary is analogous to the disputed reasonableness of the MDT Defendants in <u>Hamilton</u> following the rejection of their recommendation, concerning which the Third Circuit found summary

12

judgment inappropriate.

On the evidence available in this case, the Court concludes that the reasonableness of Lt. Harvey's response to the risk posed by inmate Johnson is not subject to dispute such as was described in Hamilton.  Rather "than disregard[ing] an excessive risk to inmate health or safety," Farmer, 511 U.S. at 837, Lt. Harvey promptly sent inmate Johnson to the infirmary to be evaluated after learning of his behavior at chow.  C.O. Lovett had told Lt. Harvey that he had a generalized concern that Johnson was "going to bust loose," (Lovett dep. at 66) but Lovett himself did not feel threatened by Johnson's comments or think that they were directed at any inmates (Lovett dep. at 96-97).  After sending Johnson to the infirmary on the basis of the generalized concern that had been expressed to him, Lt. Harvey then learned that Johnson had been seen by a nurse, who questioned him, made a mental health appointment for him for the following Monday, and released him.  Mr. Ward has adduced no evidence that Johnson, after he was released from the infirmary, was still agitated or exhibited any risk of harm, generalized or particularized, to anyone.  Thus, in the Court's view, Mr. Ward's reliance on Hamilton is misplaced, as the plaintiff in Hamilton was still clearly at risk after the recommendation that he be put in protective custody was denied.  Even if Johnson's past mental instability, which Lt. Harvey possibly had knowledge of, is

13

viewed as some evidence of a risk, that mental instability is distinguishable from the long-standing history of violence, assaults, and threats against the plaintiff in <u>Hamilton</u> that made the on-going, particularized risk of harm obvious.   <u>See Hamilton</u>, 117 F.3d at 744-45.   The Court concludes that Lt. Harvey responded reasonably to the substantial risk on which Mr. Ward has presented evidence and had Johnson sent to the infirmary. The Court further concludes that such reasonableness is sufficient to preclude liability under the Eighth Amendment.   <u>See Farmer</u>, 511 U.S. at 844.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Mr. Ward's failure to protect claim against Lt. Harvey.

### B.    Wrongful Practices and Policies

Plaintiff contends that Defendants Taylor, Howard, Carroll, Salas, and Harvey violated his Eighth Amendment rights by their deliberate indifference in the context of constitutionally inadequate policies and practices.

To succeed on a claim against supervisors based on prison policy or practices, a plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that

14

the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.  See <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)(holding that municipal or supervisory liability for a constitutional tort can hold only where the policy or practice at issue is the "moving force [behind] the constitutional violation," quoting <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 694 (1978)).  According to <u>Sample</u>, a supervisor liability claim is normally made out by a showing that a particular "harm has in fact occurred on numerous occasions," and that the official "failed to respond appropriately in the face of an awareness of a pattern of such injuries."  <u>Sample</u>, 885 F.2d at 1118.  In certain situations, however, "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it."  <u>Id.</u>

By their motion, Defendants contend that Mr. Ward has adduced no evidence suggesting that any particular training, policies, or practices were deficient.  Further, Defendants contends that Mr. Ward has failed to identify a specific policy or practice that should have been employed, or to present any

15

expert opinion testimony on the penalogical issues involved, which are beyond the scope of the lay juror.

In response, Mr. Ward contends that "the plain fact of the matter is that understaffing has been a longstanding and chronic problem at DCC, and in the DOC in general," and points to Lt. Salas's statement to verify this proposition.  (D.I. 98 at 35.) Further, with respect to the absence of policies regarding how to handle a situation like inmate Johnson's, Mr. Ward contends that these policy problems are "so obvious that Defendants must have known of their existence."  (Id. at 36.)

The Court finds Mr. Ward's arguments unpersuasive.  The evidence that Mr. Ward relies on - the unfortunate incident that befell Mr. Ward and one Lieutenant's personal view that the prison is underfunded - does not reasonably permit the inference that particular prison supervisors and officials were actually aware of, and deliberately indifferent to, an unreasonable risk of Eighth Amendment injury.  To begin, Mr. Ward has not identified a specific policy or practice that Defendants failed to employ, as is required by Sample.  See Sample, 885 F.2d at 1118; Woloszyn v. County of Lawrence, 396 F.3d 314, 325-26 (3d Cir. 2005).  Moreover, Mr. Ward relies on Lt. Salas's personal belief that the duties of the Unit 28 officer were too much for one officer to fulfill, and Salas's testimony that he *may* have relayed this belief to superiors informally, "in passing," (Salas

16

dep. at 29) to establish that a risk existed and to attribute actual knowledge of an unreasonable risk to all Defendants. The Court concludes that the facts relied upon fail to (1) sufficiently articulate a constitutionally defective policy or practice, and (2) satisfy the actual knowledge component of the subjective approach to deliberate difference, as adopted by the Farmer court. See Farmer, 511 U.S. at 842-843; Beers-Capitol, 256 F.3d at 137-38.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Mr. Ward's wrongful policies and practices claim.[5]

### C.    Inadequate Medical Care

Plaintiff contends that evidence of deliberate indifference by Defendants Taylor, Howard, and Carroll to Plaintiff's serious medical needs precludes summary judgment on his Eighth Amendment inadequate medical care claim.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim of inadequate medical care, an inmate must allege (i) a serious medical need

---

[5]In light of the Court's decision in this section, Defendants' contention that they are protected by Eleventh Amendment immunity is moot and the Court will not address it.

17

and (ii) acts or omissions by prison officials that indicate
deliberate indifference to that need.  Id., at 104; Rouse v.
Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To demonstrate
deliberate indifference, the prisoner must establish that the
"official knows of and disregards an excessive risk to inmate
health or safety; the official must both be aware of facts from
which the inference could be drawn that a substantial risk of
serious harm exists, and he must also draw the inference."
Farmer, 511 U.S. at 837.  Two scenarios that satisfy this
deliberate indifference standard include (1) "[w]here prison
authorities deny reasonable requests for medical treatment ...
and such denial exposes the inmate 'to undue suffering or the
threat of tangible residual injury,'" and (2) "where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care.'"  Spruill v. Gillis,
372 F.3d 218, 235 (3d Cir. 2004)(quoting Monmouth County
Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346
(3d Cir. 1987)(citations omitted)).  "Absent a reason to believe
(or actual knowledge) that prison doctors or their assistants are
mistreating (or not treating) a prisoner," non-medical prison
officials "will not be chargeable with the Eighth Amendment
scienter requirement of deliberate indifference."  Id., at 236.

By their motion, Defendants contend that Commissioner
Taylor, Bureau Chief Howard, and Warden Carroll ("Supervisory

18

Defendants") had no personal involvement in Mr. Ward's medical care and thus cannot be held liable under the Eighth Amendment.

In response, Mr. Ward contends that the Supervisory Defendants had knowledge of Mr. Ward's requests for medical care "by virtue of their position within the Department of Correction," and that Mr. Ward's alleged continued need for various surgeries evidences deliberate indifference by Defendants.

After reviewing the parties' contentions and papers, the Court concludes that Mr. Ward has not adduced evidence sufficient to allow a jury to reasonably conclude that the Supervisory Defendants were deliberately indifferent to a serious medical need. Mr. Ward has presented little evidence in support of this claim other than his own affidavit alleging that he sought and was denied certain medical care while incarcerated. Further, Mr. Ward has produced no evidence that any of the Supervisory Defendants, themselves, "den[ied] reasonable requests for medical treatment," Spruill, 372 F.3d at 235, or even had *any* personal involvement in Mr. Ward's medical care. Absent knowledge of and personal involvement by Defendants in Mr. Ward's medical care, Mr. Ward's claims rely on the doctrine of *respondeat superior,* which is inapplicable in the section 1983 context. See Farmer, 511 U.S. at 837; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)("A defendant in a civil rights action must have

19

personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Mr. Ward's Eighth Amendment inadequate medical care claim.

### D.    Retaliation

Plaintiff contends that Defendants Taylor, Howard, Carroll, and Davis-Barton violated his First Amendment rights by retaliating against Plaintiff after he filed this action and contacted newspapers about his situation.

A prisoner's right to access the courts stems from the First Amendment right to petition for redress of grievances. Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981). In order to prevail on a claim for retaliation in violation of First Amendment rights, a prisoner must prove (1) constitutionally protected conduct, (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). In elaborating on the causal link required by the third prong, the Rauser court adopted the burden-shifting

20

framework articulated by the Supreme Court in Mount Healthy Bd.
Of Ed. v. Doyle, 429 U.S. 274 (1977).    Rauser, 241 F.3d at 333.
Once a prisoner has satisfied the initial burden of "proving that
his constitutionally protected conduct was a 'substantial or
motivating factor' in the decision to discipline him," the burden
shifts to prison officials to prove that their decision to take
adverse action against the prisoner would have been the same,
irrespective of the protected conduct, for reasons that are
"reasonably related to a legitimate penological interest."   Id.
at 333-34 (citing Doyle, 429 U.S. at 287).

    Assuming *arguendo* that Mr. Ward has engaged in
constitutionally protected conduct, Defendants contend that Mr.
Ward has adduced no evidence of any adverse action taken by named
Defendants, or of causation between a protected act and any
alleged adverse action.   In response, Mr. Ward contends that his
inadequate medical care and inappropriate transfer to protective
custody constitute sufficient evidence of adverse actions to
create a triable issue of material fact.

    With respect to the second Rauser prong, the Court concludes
that Mr. Ward has established a genuine issue of fact on the
question of whether he suffered an adverse action.[6]   It is

_____

    [6]Mr. Ward also satisfies the first Rauser prong, which was
assumed *arguendo* by Defendants, as filing a lawsuit is protected
by the First Amendment.   See Mitchell v. Horn, 318 F.3d 523, 530
(3d Cir. 2003).

21

uncontroverted that Mr. Ward was transferred to "isolation" or "protective custody" in September of 2004.  Defendants' contentions that this reassignment was due to an altercation Mr. Ward had with another inmate, and that Defendants had no involvement in this transfer, are non-responsive to the issue of whether the transfer could be considered adverse.  The Court concludes that Mr. Ward's transfer into isolation or protective custody could be considered "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," Allah, 229 F.3d at 225, and thus presents sufficient evidence for a jury to reasonably conclude that Mr. Ward suffered an adverse action.

On the third Rauser prong, however, Mr. Ward has presented no evidence beyond mere assertion, and the Court concludes that no genuine issue of material fact exists regarding a causal connection between his protected activity and any adverse action. Mr. Ward has presented no evidence that any of the named Defendants were involved in the decision to move him to the infirmary or into protective custody.  Mr. Ward has not adduced any evidence that his filing of this action was a "substantial or motivating factor," Doyle, 429 U.S. at 287, in a named Defendant's decision to take the adverse action.  Mr. Ward has thus failed to meet his burden in establishing a prima facie case of retaliation for protected First Amendment conduct.  Even if

22

Mr. Ward had met the initial burden on causation, Defendants have met their burden of rebutting such evidence by showing that Mr. Ward's transfer followed an altercation with another inmate and was thus taken because of a legitimate penological interest.

Accordingly, the Court will grant Defendants' Motion for Summary Judge with respect to Mr. Ward's retaliation claim under the First Amendment.

### IV.  Conclusion

For the reasons discussed, the Court concludes that Plaintiff has not established issues of material fact sufficient to defeat summary judgment on any of his Eighth Amendment or First Amendment claims.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

An appropriate order will be entered.